A97A1433. GREEN v. WHITE.
(494 SE2d 681)

RUFFIN, Judge.

Brooks Green sued attorney William J. White for fraud and professional malpractice allegedly arising out of White's filing of a bankruptcy petition on Green's behalf. White moved for summary judgment on the grounds (1) that Green's claims were barred by the applicable statutes of limitation and (2) that his conduct could not constitute fraud as a matter of law. The trial court granted White's motion, and Green appeals. For reasons which follow, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in a light most favorable to Green, the evidence in this case shows that Green retained White in August 1991 to file a bankruptcy petition. According to Green, he told "White several times that [his] main concern was being able to discharge [his] 1985 and 1986 tax debts . . . and White stated . . . that he understood this." Green contended that when White filed the bankruptcy on August 2, 1991, White assured him that he was familiar with the regulations concerning the discharge of federal tax liens and that the 1986 federal tax assessment against Green would be discharged under the proceedings. The bankruptcy court entered Green's discharge on November 21, 1991. Unbeknownst to Green, however, the 1986 tax assessment was not discharged. On July 30, 1993, Green was notified in a letter from the Internal Revenue Service ("IRS") that because he filed his bankruptcy before the expiration of a three-year period in which the 1986 taxes could be collected, the taxes were not discharged. On September 7, 1993, after reviewing the IRS letter, White informed Green that he "had identified this problem in the early stages of [his] bankruptcy filing and . . . probably notified [Green] of that fact." On August 14, 1995, Green filed his complaint against White, asserting that White misrepresented to him that the taxes would be discharged and that this misrepresentation, upon which he relied to his detriment, constituted fraud and professional malpractice.

In his motion for summary judgment, White argued that Green's claims were subject to four-year statutes of limitation which began to run on August 2, 1991, the date he filed Green's bankruptcy petition. Accordingly, White contended that Green's complaint, which was filed approximately two weeks after the four-year limitation period expired, was time barred. The trial court, without elaboration, granted White's motion.

In his appeal, Green asserts that the trial court erred because (1) the limitation periods commenced less than four years before the date he filed his complaint, (2) White's fraud tolled the statutes of limitation, and (3) genuine issues of material fact exist concerning the merits of his claims.

1. *Green's claim for legal malpractice.*

(a) We note initially that we agree with the parties that Green's complaint for legal malpractice is subject to a four-year statute of limitation. See OCGA § 9-3-25; *Morris v. Atlanta Legal Aid Society*, 222 Ga. App. 62, 65 (3) (473 SE2d 501) (1996); *Brown v. Kinser*, 218

Ga. App. 385, 387 (2) (461 SE2d 564) (1995). As for commencement of the limitation period, it is well established that "the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action. [Cits.]" *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (1) (273 SE2d 16) (1980). "In legal malpractice cases, this court has followed the doctrine that a right of action arises immediately upon the wrongful act having been committed, even though there are no special damages. [Cits.]" Id. at 806. See also *Morris*, supra at 65.

It is clear in this case that White's first alleged negligent act which gave rise to Green's cause of action occurred no later than August 2, 1991, when White filed Green's bankruptcy petition. Green contends that White advised him prior to the filing that the tax lien would be discharged, and evidence shows that this filing is what caused the 1986 tax lien to be nondischargeable. Accordingly, we find that the four-year statute of limitation on Green's legal malpractice claim initially began to run no later than August 2, 1991. See id.

Green nevertheless contends that White could have dismissed the bankruptcy at any time prior to the November 21, 1991 discharge date. According to Green, White's failure to dismiss the petition constituted a separate, subsequent act of legal malpractice which triggered a new four-year limitation period, presumably commencing immediately prior to the discharge date. This allegation, however, is based upon the same allegedly erroneous advice White provided prior to filing the bankruptcy petition. "In *Jankowski*, the Georgia Supreme Court held that such an 'omission on the part of (the attorney) was a failure to avoid the ultimate effect of the earlier breach and a failure to mitigate . . . damages (but) was not an act inflicting new harm.' [Cit.]" *Long v. Wallace*, 214 Ga. App. 466, 468 (2) (448 SE2d 229) (1994). Accordingly, the court in *Jankowski* refused to hold that the subsequent acts gave rise to a new cause of action that triggered a new limitation period. See *Jankowski*, supra. See also *Long*, supra. We likewise find that in this case, White's subsequent conduct did not inflict any new harm which could constitute a new cause of action for legal malpractice. See id.; *Jankowski*, supra.

(b) We agree with Green, however, that a fact issue remains concerning whether White's alleged fraud tolled the statute of limitation on his professional malpractice claim. OCGA § 9-3-96 provides that "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Although we have held that " '[t]he fraud which will relieve the bar of the statute of limitation must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his

action[,]' . . . '[a] confidential relationship between the parties . . . lessens, if not negates, the necessity for showing actual fraud. [Cit.]' " *Arnall, Golden & Gregory v. Health Svc. Centers*, 197 Ga. App. 791, 792-793 (2) (399 SE2d 565) (1990). And, "[w]here a person sustains towards another a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation." (Citation and punctuation omitted.) Id. at 793.

The evidence in this case, viewed in a light most favorable to Green, creates a jury issue concerning whether White committed such fraud. We note initially that our conclusion here is not based solely on the alleged impropriety of White's original advice that the 1986 taxes would be discharged by the bankruptcy filing. It is clear that " '[f]raud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. (Cits.)' [Cit.]" Id. at (2). Rather, we base our decision on the additional evidence presented by White's September 7, 1993 letter to Green and Green's affidavit. As stated above, in the letter White acknowledged that he "*identified* [the] problem in the early stages of [Green's] bankruptcy filing and [he] believe[d] that [he] *probably* notified [Green] of that fact." (Emphasis supplied.) In his affidavit, however, Green denied that White informed him of the problem.

Under these circumstances, a jury could find that White, who was Green's attorney, (1) knew that one of Green's primary concerns was discharging the 1986 taxes, (2) knew that the 1986 taxes would not be discharged, and (3) that he nonetheless informed Green that the taxes could be discharged or failed to inform Green that they could not be discharged. White's own letter equivocally states only that he "probably" notified Green of the problem. " 'Where the fraudulent concealment . . . is in breach of a confidential relation involving a duty to make full disclosure, the statute (of limitation) does not begin to run until the discovery of the fraud. (Cit.)' [Cit.]" *Arnall*, supra at 793. Because the record shows that it was not until September 1993 that Green discovered that White knew of the problem but failed to disclose it, there remains a question of fact about whether White's conduct during the bankruptcy proceedings tolled the statute of limitation on Green's professional malpractice claim. See id.

(c) White contends that summary judgment was nevertheless appropriate because his affidavit shows that his recommendation to Green concerning when to file the bankruptcy was based on White's good faith exercise of professional judgment. However, such an assertion ignores evidence of record that White knew there was a problem with his advice and that he failed to inform Green of that problem. Accordingly, a genuine issue of material fact exists concerning whether White's representation in this regard constituted profes-

sional malpractice. See *Lau's Corp.*, supra.

Accordingly, we conclude that the trial court erred in granting White summary judgment on Green's professional malpractice claim. See *Arnall*, supra.

2. *Green's fraud claim.*

(a) Although it is clear that Green's fraud claim is governed by a four-year statute of limitation, it is unclear when the cause of action accrued. See OCGA § 9-3-31; *Shapiro v. Southern Can Co.*, 185 Ga. App. 677 (365 SE2d 518) (1988) (limitation period for fraud resulting in economic loss is same as for recovery of personal property). Unlike Green's professional malpractice claim, his fraud claim did not arise immediately upon the wrongful act having been committed. A claim for fraud is dependent on the accrual of actual damages, and until such damages are sustained, the cause of action is not complete and the prescriptive period cannot run. See *Brooks v. Dime Savings Bank &c.*, 217 Ga. App. 441, 442 (1) (457 SE2d 706) (1995); *Hardaway Co. v. Parsons, Brinckerhoff &c.*, 267 Ga. 424, 427-428 (1) (479 SE2d 727) (1997). Compare *Jankowski*, supra (cause of action allowing nominal damages is complete when wrongful act committed).

In this case, White has not shown when Green's fraud claim matured. Moreover, for the same reasons stated in Division 1 (b), a jury issue exists regarding whether White's alleged conduct tolled the limitation period governing Green's fraud claim. See *Arnall*, supra. Accordingly, the trial court erred in granting White summary judgment on this ground.

(b) We also find a genuine issue of fact remains concerning the merits of Green's fraud claim. Although White's initial advice concerning the dischargeability of the 1986 taxes may constitute "erroneous conjecture as to future events," in light of the confidential relationship of the parties and evidence, albeit disputed, that White *knew* his advice was inaccurate and that he failed to inform Green of this fact, his conduct could constitute fraud. See id. And, although White asserts on appeal that summary judgment was appropriate on Green's fraud claim for numerous other reasons, he never moved for summary judgment on these grounds below and "[i]t is axiomatic that a ground urged for the first time on appeal will not be considered." (Citations and punctuation omitted.) *Kennedy v. Johnson*, 205 Ga. App. 220, 222 (1) (421 SE2d 746) (1992). For these reasons, a factual issue remains concerning whether White's conduct constituted fraud. See *Arnall*, supra.

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 28, 1997 —
RECONSIDERATION DENIED DECEMBER 9, 1997.

*Mottern & Van Gelderen, Leon A. Van Gelderen, Sheri M. Rosenthal*, for appellant.
*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Mary L. Hahn*, for appellee.