S97G1816. HUNTER, MACLEAN, EXLEY & DUNN, P.C.
v. FRAME et al.
(507 SE2d 411)

SEARS, Justice.

This Court granted certiorari to the Court of Appeals in this legal malpractice action to consider that court's reversal of the grant of summary judgment in favor of the defendant law firm.[1] We conclude that the Court of Appeals incorrectly reasoned that the run-

---

[1] *Frame v. Hunter, Maclean, Exley & Dunn, P.C.,* 227 Ga. App. 169 (488 SE2d 713) (1997).

ning of the applicable statute of limitations was tolled solely by the existence of a confidential relationship between the parties, despite the absence of evidence that there had been an attempt by the defendant law firm to conceal the purported instance of malpractice from the plaintiff, or that the plaintiff was deterred from bringing a claim. Therefore, we reverse.

The pertinent underlying facts are not in dispute. Christopher and Rosemary Frame were the sole owners, stockholders, and officers of a holding company, C.F., Inc., that owned several gasoline and convenience store-related businesses. Among these businesses was Wes Frame, Inc. Hunter, Maclean, Exley & Dunn ("the law firm"), which had represented the Frames for roughly 20 years, served as their counsel during the sale to Golden Isles Petroleum, Inc. ("Golden Isles") of Wes Frame, Inc.'s stock and the assets of other convenience store-related businesses. The closing took place on April 25, 1989 ("the Golden Isles transaction"). Thereafter, Golden Isles determined that Wes Frame, Inc. was worth less than had been reported in the closing documents.

On July 27, 1989, Golden Isles filed a federal lawsuit against the Frames and their holding company, seeking damages for securities fraud and breach of contract concerning the Golden Isles transaction. The law firm informed the Frames that it could not represent them in the action, because it was likely to be called to testify regarding the Golden Isles transaction. After obtaining an extension of time for the Frames to file their answer, the law firm assisted them in obtaining different counsel to defend the Golden Isles lawsuit. At trial, it was revealed that material financial information had been omitted from the closing documents, resulting in the overvaluation of Wes Frame, Inc. The Frames and C.F., Inc. were found liable, and damages were assessed against them due to these material omissions. The Frames subsequently filed this legal malpractice action, alleging that the judgment against them was caused by the law firm's professional negligence in handling the Golden Isles closing.

Under normal circumstances, the statute of limitations for legal malpractice actions runs from the date of the alleged incident of malpractice.[2] Hence, the four-year statute of limitation for the Frames' malpractice claim concerning the Golden Isles transaction normally would have expired on April 24, 1993, four years after the transaction's closing.[3] However, in March 1993, the law firm executed a written tolling agreement that extended the statute of limitation for the Frame's malpractice claim for an additional year — until April 24,

---

[2] *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980).

[3] See OCGA §§ 9-3-31; 9-3-25.

1994. On September 26, 1994, after the extended deadline had passed, the Frames filed suit against the law firm for legal malpractice with respect to the Golden Isles transaction. The Frames' complaint alleged that the law firm had engaged in substandard disclosure practices in the Golden Isles transaction, and that the firm's failure to include accurate financial data in the closing package provided the basis for Golden Isles' suit for securities fraud and contract breach.

The trial court granted summary judgment in favor of the law firm, concluding that (1) because the extended deadline for filing the malpractice claim had passed, the Frames' complaint was time barred, and (2) because there was "no evidence in the record to suggest that [the law firm] intentionally misinformed, misadvised, inadequately counseled, misled, or obscured facts from the [Frames]," the statute of limitations had not tolled. The Court of Appeals reversed, concluding that because the law firm maintained contact with the Frames during the pendency of the Golden Isles lawsuit, and continued to advise the Frames that they had no exposure to liability in the lawsuit, a confidential relationship existed between the law firm and the Frames sufficient to toll the running of the statute of limitations. This Court granted certiorari to address the propriety of that ruling.

1. The statute of limitations is tolled in malpractice actions when a defendant intentionally conceals an act of professional negligence from a plaintiff, causing the plaintiff to be deterred from bringing a claim.[4] Our Code provides that "[i]f a defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."[5] This provision has always been strictly construed to require (1) actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence.[6] Furthermore, prescribing periods of limitation is a legislative, not a judicial, function, and thus all analyses of whether the running of a particular limitation period has been tolled must be performed within the statutory framework.[7]

In considering what actions will toll the running of a limitation period, this Court has distinguished between cases where the underlying claim is actual fraud, and cases where the underlying claim is

---

[4] OCGA § 9-3-96; *Riddle v. Driebe*, 153 Ga. App. 276 (265 SE2d 92) (1980).

[5] OCGA § 9-3-96.

[6] *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343, 344 (245 SE2d 297) (1978).

[7] See *Sutlive v. Hackney*, 164 Ga. App. 740, 745 (297 SE2d 515) (1982) (Carley, J., dissenting) ("prescribing periods of limitation is a legislative function, not a judicial one. In this instance, the legislature has spoken.").

something other than fraud. In cases where the gravamen of the underlying complaint is actual fraud, the limitation period is tolled "until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence."[8] On the other hand, in situations such as exist in this appeal, where the gravamen of the underlying action is not a claim of fraud, but rather of malpractice, the statute of limitations is tolled only upon a showing of "a separate independent actual fraud involving moral turpitude which . . . deters [a] plaintiff from [filing suit]."[9] In such cases, before the running of the limitation period will toll, it must be shown that the defendant concealed information by an intentional act — something more than a "mere failure, with fraudulent intent, to disclose such conduct, unless there is on the party committing such wrong a duty to make a disclosure thereof by reason of facts and circumstances, or the existence between the parties of a confidential relation[ship]."[10]

It is this last phrase — "the existence . . . of a confidential relation[ship]" — which the Court of Appeals relied upon in finding that the limitation period in this case had tolled. Focusing on evidence (1) that throughout the Golden Isles litigation, the law firm continued to assure the Frames that they had not exposed themselves to liability in closing the Golden Isles transaction, and (2) that the law firm had represented the Frames for a number of years, the Court of Appeals concluded that the firm used its confidential relationship with the Frames to "actually lull [them] into not understanding the quality and effect of [the firm's] prior legal services."[11] In reaching this conclusion, the Court of Appeals relied upon its own precedent from *Sutlive*, supra, that "the existence . . . of a confidential relationship between the parties lessens, *if not negates*, the necessity of showing actual fraud" in tolling situations.[12] The crux of the Court of Appeals' decision in this matter is its conclusion that the confidential relationship between the Frames and the law firm dispensed with the need to show intentional concealment and actual deterrence before the limitations statute will be tolled. For the reasons explained below, we disagree with that conclusion.

Because the existence of a confidential relationship between the parties, such as existed here, does not affect the *existence* of fraud — that is, the intention to conceal or deceive — a confidential relationship cannot, standing alone, toll the running of the statute. Rather, a

---

[8] *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980).

[9] Id.

[10] *Shipman*, 245 Ga. at 809 (quoting *American Nat. Bank v. Fidelity &c. Co.*, 131 Ga. 854 (68 SE 622) (1908)).

[11] *Hunter, Maclean &c.*, 227 Ga. App. at 171.

[12] *Sutlive*, 164 Ga. App. at 742 (emphasis supplied).

confidential relationship means only that the plaintiff has cause to rely upon, and place confidence in, the defendant.[13] Thus, it affects only the *extent* of (a) the defendant's duty to reveal fraud,[14] and (b) the plaintiff's corresponding obligation to discover the fraud for herself. Where a confidential relationship exists, a plaintiff does not have to exercise the degree of care to discover fraud that would otherwise be required, and a defendant is under a heightened duty to reveal fraud where it is known to exist. Put another way, a confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. But the fraud itself — the defendant's intention to conceal or deceive — still must be established, as must the deterrence of a plaintiff from bringing suit.[15]

Otherwise, an undesirable anomaly will be created with regard to tolling issues in malpractice cases. As explained above, where the gravamen of a malpractice claim is actual fraud, then the limitation period is tolled until the fraud is, or through the exercise of ordinary care should have been, discovered. Thus, a lawyer who is sued for actual fraud may, when claiming that the limitation period has run, rely upon the plaintiff's duty to exercise ordinary care and diligence to discover the fraud, even though a confidential relationship exists. That requirement certainly is not eliminated merely because the underlying action does not sound in fraud, but rather in professional negligence (or contract breach, or conversion, etc.).[16] It follows that the existence between the parties of a confidential relationship is not a separate and independent basis for tolling, but rather it is an important factor affecting the duty to disclose and the duty of ordinary diligence, to be considered in the fraud analysis itself. This is the only construction of the Court of Appeals' ruling in *Sutlive*, supra, that can coexist with the Code's provision that the limitation period is tolled only by intentional concealment that debars or deters the plaintiff's bringing of an action.[17]

Furthermore, this construction avoids a second undesirable anomaly that would result from the Court of Appeals' ruling. Under

---

[13] See *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975).

[14] See *Brown v. Brown*, 209 Ga. 620, 621 (75 SE2d 13) (1953) (In cases of confidential relationship, silence when one should speak, or failure to disclose what ought to be disclosed, is "as much a fraud in law as an actual affirmative false representation.").

[15] See ns. 5, 6, supra, and accompanying text.

[16] See, e.g., *Waters v. Rosenbloom*, 268 Ga. 482 (490 SE2d 73) (1997) (in malpractice case against physician, suit was barred because plaintiff "knew or through reasonable diligence should have discovered the injury" and its cause, despite the existence of a confidential relationship).

[17] See n. 12, supra, and accompanying text.

the inaccurate reasoning that a confidential relationship alone is sufficient to toll the limitation period in malpractice cases, the statute would be tolled indefinitely, so long as the confidential relationship continued — even if the plaintiff was fully aware of the facts underlying his allegation of malpractice, but merely slept on his right to bring suit. Under such reasoning, the only way that a defendant professional could commence the running of the statute of limitations on a potential malpractice claim would be to completely sever her relationship with the plaintiff. That result would essentially be an adoption of the "continuing representation rule," which has been consistently rejected by Georgia courts in the malpractice context,[18] and which we expressly decline to adopt in this case.

For the reasons discussed above, we hereby overrule that portion of the Court of Appeals' holding in *Sutlive*, supra, stating that the existence of a confidential relationship between the parties "negates" the necessity of showing actual fraud — i.e., concealment and deterrence — in tolling situations. A confidential relationship between the parties imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. But the fraud itself — the defendant's intention to conceal or deceive — still must be established, as must the plaintiff's deterrence from bringing suit. While we are, as always, hesitant to overrule precedent, this is the only possible construction of *Sutlive* that is consistent with both this Court's precedent and OCGA § 9-3-96.

2. Applying these principles to the present appeal, we look to the following findings of undisputed fact, as made by the trial court: The law firm represented the Frames and C.F., Inc. throughout the negotiation and closing of the Golden Isles transaction, which occurred on April 25, 1989. The following errors occurred at the closing: (1) "trade payables" relevant to the purchased entity (Wes Frame, Inc.) were not listed on a required financial schedule; (2) no employment contracts for Mr. and Mrs. Frame were executed; (3) executed documentation required Golden Isles to pay off a loan over ten years, rather than the agreed-upon fifteen years; and (4) required UCC personal property statements were not properly filed.

Within 30 days of closing, Mrs. Frame, Vice-President and Secretary of C.F., Inc. knew that the "trade payables" were not listed on the required financial statement. Within six months of closing, Mrs. Frame knew that the employment contracts were not executed at closing, and both Mr. and Mrs. Frame knew that the closing docu-

---

[18] See, e.g., *Ford v. Dove*, 218 Ga. App. 828 (463 SE2d 351) (1995); *Crawford v. Spencer*, 217 Ga. App. 446 (457 SE2d 711) (1995).

ments required Golden Isles to pay off the loan within ten, rather than fifteen years. Approximately two years and three months after closing, Mr. Frame, president of C.F., Inc., learned that the UCC statements were not properly filed. Consistent with these findings, Mr. Frame admitted under oath that no member of the law firm had ever intentionally misrepresented any fact regarding the closing of the Golden Isles transaction, and that he was not aware of any documentation that would support a claim of intentional misrepresentation.

Following the closing, the law firm continued to represent the Frames and C.F., Inc. Fifteen months after closing, Golden Isles filed suit in federal district court against the Frames and C.F., Inc. for securities law violations, breach of contract, and misappropriation of funds. By 18 months after closing, the Frames had retained a different law firm to represent them and C.F., Inc. in the Golden Isles lawsuit. During the pendency of the Golden Isles lawsuit, the law firm continued to maintain that it had done nothing at the closing that would have exposed the Frames to liability. The Frames and C.F., Inc. were found liable in the Golden Isles lawsuit for $585,000 in damages, and, in an unpublished opinion, the Eleventh Circuit Court of Appeals affirmed that judgment on August 30, 1993 — four years and four months after the closing.[19]

While the appeal to the Eleventh Circuit was pending, on April 21, 1993 — slightly less than four years after closing — the law firm agreed to extend the applicable four-year limitation period for one additional year, until April 25, 1994. The Frames' malpractice complaint was filed on September 26, 1994, slightly more than five years and five months after closing of the Golden Isles transaction, and five months after the extended limitation date.

As stated above, the statute of limitations in malpractice actions runs from the date on which the malpractice occurred,[20] and is tolled when the defendant intentionally conceals information that he ought to reveal, thereby causing the plaintiff to be deterred from filing suit. Because this case involved a confidential relationship between a lawyer and client, the defendant's obligation to reveal what ought to be revealed is heightened, and the plaintiff's obligation to discover fraud for herself is lessened.

In this case, by the Frames' own admission, the law firm intentionally concealed nothing from them regarding the Golden Isles transaction. Thus, the statute of limitation in this matter could not have tolled — as one of the elements for tolling was admittedly non-

---

[19] See *Golden Isles Petroleum v. Frame*, 3 F3d 443 (11th Cir. 1993).
[20] *Jankowski*, supra.

existent. Furthermore, within six months of the closing of the Golden Isles transaction, the Frames knew of three of the four material errors that occurred at the closing, and that later would provide the basis for the judgment against them in the Golden Isles lawsuit. Moreover, the Frames learned of the fourth material error within two years and three months of closing. Accordingly, even if there was some evidence that the law firm had, at the time of closing, attempted to conceal its errors from the Frames, that attempt would have failed because the Frames admittedly learned of the errors well within the limitation period. In fact, the Frames knew about most of the errors within six months of the closing. Therefore, the Frames could not have been deterred from bringing suit as early as October 1989, yet they failed to do so until almost five years later.

While the statute of limitation was not tolled by any fraudulent conduct on the law firm's part, it was tolled until April 23, 1994, by the written tolling agreement. The complaint in this matter, however, was not filed until September 26, 1994, after the running of both the statutory and extended limitation period. Accordingly, the action is time barred by the applicable statute of limitation, and the Court of Appeals's contrary ruling must be reversed. On remand, the Court of Appeals may consider justiciable issues previously raised, but not decided, in that Court.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 14, 1998 —
RECONSIDERATION DENIED OCTOBER 2, 1998.

*Oliver, Maner & Gray, Patrick T. O'Connor, Timothy D. Roberts, King & Spalding, Byron Attridge, Michael L. Brown, Deborah A. Penley,* for appellant.

*Savage, Herndon & Turner, Robert B. Turner, Robert S. Kraeuter, Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Mary L. Hahn,* for appellees.

*William P. Smith III, General Counsel State Bar, Romaine L. White, Deputy General Counsel State Bar, Gambrell & Stolz, Linda A. Klein, Chambless, Higdon & Carson, Joseph H. Chambless, Rothschild & Morgan, W. Donald Morgan,* amici curiae.