A07A0694. HAMBURGER v. PFM CAPITAL MANAGEMENT, INC. et al.
(649 SE2d 779)

RUFFIN, Judge.

Nancy R. Hamburger sued PFM Capital Management, Inc., an investment advisory company, alleging that PFM mismanaged her retirement account by making risky and unsuitable investments and failing to diversify her holdings.[1] Specifically, Hamburger sought to recover damages for breach of fiduciary duty, breach of contract, negligence, fraud, and intentional infliction of emotional distress. PFM filed a motion for summary judgment, alleging that Hamburger's claims were time-barred, and the trial court granted the motion. Hamburger appeals, arguing that the trial court erred in finding that her claims were barred by the applicable statutes of limitation.[2] For reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn therefrom, in a light most favorable to the nonmovant.[4] Where the moving party has shown an absence of evidence to support any element of the nonmoving party's

---

[14] See *Allstate,* supra; *Willis,* supra; *Aycock v. Calk,* 228 Ga. App. 172, 175-176 (491 SE2d 383) (1997).

[1] PFM Capital Management, LLC is the successor entity to PFM Capital Management, Inc. Hamburger also named PFM Capital Management, LLC and its co-owners, Robert C. Atkinson, Jr. and Daniel C. Henning, as defendants. For purposes of this appeal, we refer to the defendants collectively as "PFM."

[2] In its final order, the trial court granted summary judgment as to Hamburger's claim for intentional infliction of emotional distress. Hamburger does not challenge this ruling on appeal.

[3] See OCGA § 9-11-56 (c); *Gilley v. Hudson,* 283 Ga. App. 878, 879 (642 SE2d 898) (2007).

[4] See *Bonner v. Southern Restaurant Group,* 271 Ga. App. 497 (610 SE2d 129) (2005).

case, the nonmoving party cannot rest on its pleadings, but must point to specific evidence creating a triable issue.[5]

So viewed, the evidence shows that as part of her divorce settlement in March 1998, Hamburger received approximately 31,000 shares of Coca-Cola stock. In February 1998, she retained PFM as her investment advisors to manage her assets — including the Coca-Cola stock — in her IRA held by Charles Schwab & Co., Inc. The parties entered into an agreement on February 9, 1998 which memorialized the parties' "understanding of the terms and objectives of [PFM's] engagement to provide Personal Financial Planning Services to [Hamburger]." The agreement provided that in exchange for a management fee of 1 1/2 percent of the "investable assets," PFM would analyze Hamburger's financial information, provide a written analysis of her existing investments, and, after conferring with Hamburger, provide a finalized investment plan. The agreement described the limitations on the scope of services provided by PFM:

> [T]hese services are not designed, and should not be relied upon, as a substitute for a participant's own business judgment[,] nor are they meant to mitigate the necessity of a participant's personal review and analysis of a particular investment. These services are designed to supplement the individual's own planning and analysis and aid the individual in fulfilling . . . her financial objectives. In addition, these services are not designed to discover fraud, irregularities, or misrepresentations made in materials provided to us concerning existing or potential investments.

However, PFM had authority to execute stock trades without express permission from Hamburger. The parties also signed a separate document on February 9, 1998 entitled "Statement of Investment Policies, Objectives[,] and Guidelines for Nancy R. Hamburger." The Statement explained that the desired rate of return was "10% per year and at least 4% per year, on average, above the rate of consumer price inflation over the investment time horizon" and that the parties "desired that the portfolio return surpass the Standard & Poor's 500 total return over the investment time horizon." The Statement also provided that: "[t]here are no specific limitations on asset turnover levels"; "[t]here are no specific guidelines on the number of different securities to own[, but] . . . good diversification will be a key ongoing objective"; and "these objectives are in no way a guarantee that the goals outlined herein will be achieved." Pursuant to the Statement,

---

[5] See *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004); *Gilley*, supra.

PFM was required to provide Hamburger quarterly communications "reviewing the account holdings, transactions over the recent quarter, performance[,] and the economic environment." PFM sent Hamburger quarterly statements as required by the parties' agreement. The statements included a summary of the investments and activity in Hamburger's IRA account, including, inter alia, the dollar value of the account, the type and percentage of investments in the account, the percentage of gain or loss for each investment and the account as a whole, a description of the investments, with the value and price per share of the investment when bought or sold, and a list of all transactions in the account.

Three quarterly statements sent to Hamburger in 1998 showed the percentage of the IRA that was invested in Coca-Cola stock: 81 percent in the July 1, 1998 statement; 74 percent in the October 1, 1998 statement; and 60 percent in the January 1, 1999 statement. Beginning in 1998, the quarterly statements revealed substantial losses in Hamburger's IRA, including a nearly $500,000 loss from February 8, 1998 to October 1, 1998. The value of the Coca-Cola stock in the IRA also declined, resulting in losses of over $200,000 for both the fourth quarter of 1998 and the first quarter of 1999. From March 31, 1998 to August 31, 2001, Hamburger's IRA lost over $611,000 under PFM's management, while the S&P 500 index gained over $34,000 during that same time period.

Hamburger terminated her agreements with PFM in August 2001 and transferred her accounts to another investment advisor. On January 4, 2005, Hamburger filed her complaint seeking damages for breach of fiduciary duty, breach of contract, negligence, fraud, and intentional infliction of emotional distress. The complaint specifically alleges that PFM placed Hamburger's "retirement savings into unreasonably risky investments, unsuitable investments, failed to diversify her holdings, and mismanaged [Hamburger]'s account," contrary to the parties' agreements and the duties PFM owed to her.

PFM moved for summary judgment, arguing that Hamburger's claims were barred by the applicable statutes of limitation. The trial court agreed and granted PFM's motion. On appeal, the sole issue presented is whether Hamburger's claims are barred by the applicable statutes of limitation.

1. Hamburger contends that the trial court erred in concluding that her breach of contract claims were time-barred. Under OCGA § 9-3-24, an action for breach of a written contract must be brought within six years of the breach. Thus, in the instant case, where the complaint was filed on January 4, 2005, Hamburger's breach of contract claims must have accrued no later than January 4, 1999, unless Hamburger can establish that the statute of limitation was

tolled.[6] "The discovery rule is not applicable to a cause of action based on breach of contract; with respect to a breach of contract claim, the statute of limitation runs from the time the contract is broken rather than from the time the actual damage results or is ascertained."[7] Here, the trial court concluded that all of Hamburger's breach of contract claims began to accrue in 1998 and, therefore, were time-barred.

(a) We agree with the trial court that Hamburger's claims that PFM failed to properly diversify or otherwise manage her IRA in 1998 were not timely filed.[8] And unless Hamburger can establish that the statute of limitation is tolled, she cannot recover damages for any losses she sustained as a result of investments made prior to January 4, 1999.[9]

Hamburger also alleged, however, that PFM made risky and unsuitable investments with her account. Specifically, Hamburger contends that PFM "purchased many high-risk, technology stocks" for her IRA after January 4, 1999 and that "each of these purchases constitutes a separate and independent breach of the parties' written contract that occurred within the six-year limitations period." Pretermitting whether each investment would constitute a separate breach, Hamburger has not pointed to any competent evidence in the record that PFM actually purchased such stocks after January 4, 1999. In her appellate brief, Hamburger lists five stocks that she contends were high-risk and purchased by PFM after that date. To support her allegation, she refers to statements for her IRA for the quarters ending on March 31, 2001 and June 30, 2001. Although the statements indicate that she *held* the stocks about which she complains during those periods, it is not clear from our reading of the statements that PFM *purchased* those stocks on her behalf after January 4, 1999. And we will not cull the record for evidence to support Hamburger's claim, as "[t]he responsibility to locate and cite evidence in the record rests with counsel, not this Court."[10] " 'Allegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment.' "[11] Thus, because Hamburger has failed to point to competent evidence in the record to support her claim that PFM made risky stock purchases in her

---

[6] See OCGA § 9-3-24.

[7] *Moore v. Dept. of Human Resources*, 220 Ga. App. 471, 472 (1) (469 SE2d 511) (1996).

[8] See OCGA § 9-3-24.

[9] See id.

[10] *Monterey Community Council v. DeKalb County Planning Comm.*, 281 Ga. App. 873, 875 (1) (637 SE2d 488) (2006).

[11] *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 786 (3) (a) (613 SE2d 112) (2005).

account after January 4, 1999, we conclude that her breach of contract claim on this ground was not timely filed.

(b) Hamburger also alleges that PFM breached the parties' agreement "by transferring Coca-Cola stock into an unmanaged asset category while continuing to collect a management fee on that stock." PFM erroneously argues that we cannot consider this argument because Hamburger asserted it for the first time on appeal. Although she did not allege this specific claim in her complaint, Hamburger briefly addressed it in her written response to PFM's motion for summary judgment.[12] And despite PFM's argument to the contrary, she clearly raised this issue at oral argument.[13] Thus, we deem it proper to consider this argument.[14]

There is evidence that PFM reclassified the Coca-Cola stock from a managed asset to an unmanaged asset between March 31, 2001 and June 20, 2001. Because Hamburger contends that the breach was based upon PFM's assessment and collection of management fees on the unmanaged stock, her claim on this basis did not accrue until 2001, when PFM reclassified the stock and collected the management fees, which was well within the six-year statute of limitation for breach of contract.[15] Thus, we reverse the trial court's grant of summary judgment as to Hamburger's claim for breach of contract based upon PFM's purported improper collection of management fees.

2. Hamburger also contends that the trial court erroneously concluded that her breach of fiduciary duty claim was not timely filed. In its order, the trial court found that Hamburger's breach of fiduciary duty claim was time-barred regardless of whether a four-year or a six-year statute of limitation applied.[16] According to Hamburger, the factual basis for her breach of fiduciary duty claim mirrors that of her claim for breach of contract. Thus, our analysis of whether she

---

[12] Although Hamburger did not allege in her brief to the trial court that PFM's collection of the management fees for the unmanaged Coca-Cola stock constituted a breach of contract or fiduciary duty, she did argue that categorizing the stock as an unmanaged asset was an effort to conceal PFM's failure to properly manage her assets.

[13] We cannot discern whether the trial court considered this issue, as it is not mentioned in the summary judgment order.

[14] See *BTL COM v. Vachon*, 278 Ga. App. 256, 259 (1), n. 3 (628 SE2d 690) (2006) (plaintiff's theory raised for first time at summary judgment hearing properly considered on appeal, as complaint deemed amended to conform to evidence presented); *DeLoach v. Foremost Ins. Co.*, 147 Ga. App. 124, 125 (1) (a) (248 SE2d 193) (1978).

[15] See *Baker v. Brannen/Goddard Co.*, 274 Ga. 745, 749 (2) (559 SE2d 450) (2002) ("A statute of limitations begins to run 'on the date that suit on the claim can first be brought.' ").

[16] See *Crosby v. Kendall*, 247 Ga. App. 843, 849 (2) (c) (545 SE2d 385) (2001) (applying six-year statute of limitation set forth in OCGA § 9-3-24 to claim for breach of fiduciary duty); *Kothari v. Patel*, 262 Ga. App. 168, 174 (3) (585 SE2d 97) (2003) (applying four-year statute of limitation set forth in OCGA § 9-3-31 to breach of fiduciary duty claim).

asserted her breach of fiduciary duty claim within the statute of limitation is the same as that for the breach of contract claim.

Pretermitting whether the applicable statute of limitation is four or six years, Hamburger failed to show that PFM failed to diversify her account or made risky stock purchases in her account after January 4, 1999.[17] While Hamburger alleges that PFM's discretionary authority over her account created an ongoing duty to diversify her investments, she has not come forward with evidence that PFM should have taken specific action during the relevant time period. Her expert testified that PFM should have sold the Coca-Cola stock in May, June, or July 1998. While he suggested that other strategies, such as stop loss orders or option collars, might have been used to mitigate Hamburger's losses, he never stated when these actions should have been taken. And the failure to correct an act which caused damages, without more, "is not a separate breach for which the client has a new cause of action."[18] Thus, her claim for breach of fiduciary duty on this basis is barred by the statute of limitation.

Hamburger also alleges that PFM's collection of management fees for her Coca-Cola stock after it was categorized as an unmanaged asset constitutes a breach of fiduciary duty. As set forth in Division 1 (b), this categorization occurred sometime between March 31, 2001 and June 20, 2001. Therefore, because her breach of fiduciary duty claim on this basis accrued within four years of the date that Hamburger filed her complaint, it was timely filed, regardless of whether we apply a four-year or a six-year statute of limitation, and we reverse the trial court's grant of summary judgment as to this particular claim.[19]

3. Hamburger contends that the trial court erred in concluding that her fraud claim was time-barred. In Georgia, the statute of limitation for fraud claims is four years.[20] In her complaint, Hamburger alleged that PFM defrauded her by "repeatedly represent-[ing]" that it would diversify her retirement savings. However, because Hamburger has not come forward with evidence that the purported misrepresentation and resulting losses occurred less than

---

[17] See Division 1 (a).

[18] *Leon Jones Feed &c. v. Gen. Business Svcs.*, 175 Ga. App. 569, 571 (333 SE2d 861) (1985); see *Stocks v. Glover*, 220 Ga. App. 557, 558 (1) (469 SE2d 677) (1996).

[19] See *Allen v. Columbus Bank & Trust Co.*, 244 Ga. App. 271, 272 (1) (534 SE2d 917) (2000) (cause of action for breach of fiduciary duty accrues each time defendant commits a wrongful act that causes appreciable damage); *Leon Jones*, supra at 570.

[20] See OCGA § 9-3-31; *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 417 (1) (597 SE2d 512) (2004); *Green v. White*, 229 Ga. App. 776, 780 (2) (a) (494 SE2d 681) (1997).

four years before she filed her complaint, her fraud claim is barred by the statute of limitation unless she can show that the statute was tolled.[21]

4. Hamburger contends that the statutes of limitation for her claims were tolled by fraud. We disagree.

Georgia law provides that "[i]f the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."[22] In cases where the gravamen of the underlying cause of action is actual fraud, "the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered."[23] And "[f]ailure to exercise reasonable diligence to discover the fraud may be excused where a relationship of trust and confidence exists between the parties."[24] In contrast,

> where the gravamen of the underlying action is not a claim of fraud, . . . the statute of limitations is tolled only upon a showing of a separate independent actual fraud involving moral turpitude which deters a plaintiff from filing suit. In such cases, before the running of the limitation period will toll, it must be shown that the defendant concealed information by an intentional act — something more than a mere failure, with fraudulent intent, to disclose such conduct, unless there is on the party committing such wrong a duty to make a disclosure thereof by reason of facts and circumstances, or the existence between the parties of a confidential relationship.[25]

Here, pretermitting whether fraud is the gravamen of her cause of action or whether the parties had a confidential relationship, Hamburger has not established that PFM's actions tolled the applicable statutes of limitation. She admitted that she received quarterly statements from PFM which she read and retained. The statements clearly disclosed the allocations of her holdings, including PFM's purported failure to diversify the stock holdings in the account, and the losses sustained by her IRA. Indeed, Hamburger's own expert

---

[21] See *Nash*, supra at 418; *Green*, supra (fraud claim accrues at the time the misrepresentation results in actual damages).

[22] OCGA § 9-3-96.

[23] *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980).

[24] Id. at 808-809.

[25] (Citation and footnotes omitted.) *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847 (1) (507 SE2d 411) (1998).

believed the account statements adequately communicated the status and value of the account to Hamburger. And documents in the record indicate that she was concerned about the poor performance of her account in 2000.

Hamburger was aware of the facts that she contends gave rise to her claims, including fraud, when she reviewed the statements that PFM provided her in 1998, which clearly revealed the losses and the percentage of Coca-Cola stock in her IRA. Thus, her argument that she "did not discover the fraud until after she terminated her contract with [PFM] in 2001" is without merit.[26]

Moreover, Hamburger has failed to show that PFM intentionally deceived her or made false or misleading statements with the intention to deter her from filing her lawsuit. PFM in no way prevented her from retaining an independent auditor or advisor to review her IRA documents to explain the losses and purported lack of diversity in the account. And Hamburger admitted in her deposition that she was "not sure [PFM] lied" and when asked whether she contended that PFM acted intentionally to harm her, she replied: "Oh, no, I don't contend that because I don't know that. I don't feel that. I mean, I can't know that."

Thus, "[w]e find the record devoid of any evidence of concealment or actual fraud on the part of [PFM] which deterred or debarred [Hamburger] from discovering the acts which are the basis of this action and which would have tolled the statute of limitation."[27] She received regular statements showing all of the activities of her IRA and "the information contained in those very statements shows the mismanagement she alleges. [Hamburger] cannot put it on the back burner, shove the statements in a drawer, sit on her rights, and then hope to bring a lawsuit clearly outside the statute of limitation period."[28] The trial court did not err in concluding that there was no legal or factual basis to toll the statutes of limitation on Hamburger's claims.[29]

5. Finally, Hamburger relies upon *Barnes v. Turner*[30] in support of her argument that, because PFM undertook a continuing duty to manage her account, her causes of action did not begin to accrue until she terminated her business relationship with PFM in August 2001. Her reliance is misplaced. In *Barnes*, the plaintiff filed a legal

---

[26] See *Stricker v. Epstein*, 213 Ga. App. 226, 229-230 (2) (444 SE2d 91) (1994); compare *Green*, supra at 778-780 (1) (b), (2) (a).

[27] *Allen*, supra at 277.

[28] (Punctuation omitted.) Id.

[29] See *Hunter*, supra; *Allen*, supra; compare *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 694-695 (577 SE2d 864) (2003).

[30] 278 Ga. 788 (606 SE2d 849) (2004).

malpractice case against the attorney who handled the closing on the sale of his business.[31] The attorney filed the original UCC filing statements in October 1996 to perfect the plaintiff's security interest in the promissory note signed by the buyer, but he failed to advise the client that the statements expired within five years unless renewed pursuant to OCGA § 11-9-515. The UCC statements lapsed in October 2001 and, as a result, the plaintiff was unable to collect the debt. The plaintiff filed the lawsuit in October 2002, and the defendant moved to dismiss. Finding that the malpractice was the attorney's failure to inform his client of the renewal requirement in October 1996, the trial court dismissed the action because it was not filed within the four-year statute of limitation.[32] We affirmed and our Supreme Court reversed, concluding that the statute of limitation accrued when, after failing to inform his client of the renewal requirement in 1996, he breached his duty to renew the statement on the client's behalf in 2001.[33]

But *Barnes* is not applicable to the instant case, which involves alleged breach of contract and fiduciary duty by an investment advisor. The Supreme Court specifically limited its holding to the facts of that case.[34] Given this limiting language, we cannot agree that the Supreme Court intended that its holding in *Barnes* be applied to a nonlegal malpractice case and we decline to so extend it.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JULY 6, 2007 — 

*Robert D. Howell, O. Wayne Ellerbee*, for appellant.
*Kilpatrick Stockton, Stephen E. Hudson*, for appellees.

---

[31] See id.
[32] See id. at 789.
[33] See id. at 792 (2); *Barnes v. Turner*, 265 Ga. App. 6 (593 SE2d 9) (2003).
[34] See 278 Ga. at 791 (1).