PRACTICAL OFFSET, INC., *et al.*, Plaintiffs-Appellees, *v.* JACK R. DAVIS, Defendant-Appellant.

First District (2nd Division)   No. 79-131

Opinion filed April 22, 1980.—Rehearing denied May 19, 1980.

Michael A. Pope and Thomas M. Hoidal, both of Phelan, Pope & John, of Chicago, for appellant.

Richard F. Watt, Robert H. Nichols, and Stephen D. Froikin, all of Cotton, Watt, Jones, Kind & Bowlus, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs brought this legal malpractice action to recover damages caused by defendant's alleged negligence in representing plaintiffs in the sale of their business assets. The specific conduct alleged was that defendant failed to ensure the filing of a financing statement necessary to perfect the security interest retained by plaintiffs in the assets sold.

The trial court entered summary judgment in favor of plaintiffs on the issue of liability. On appeal, defendant contends summary judgment was improper because: (1) genuine issues exist as to material facts and plaintiffs were not entitled to judgment as a matter of law; and (2) the court erroneously considered an affidavit (submitted by an expert on behalf of plaintiffs) that contained conclusions of law.

The trial court based its decision on the facts as established by the pleadings, the depositions of the parties, the affidavit of plaintiffs' expert, and other matters of record. Plaintiff, Practical Offset, Inc. (Practical), is an Illinois corporation formerly engaged in the offset printing business. Plaintiffs Robert and Helen Schmidt are the sole shareholders of Practical. Defendant Jack R. Davis is an attorney engaged in the practice of law in the city of Chicago.

The complaint and answer establish that negotiations took place between plaintiffs and Carriage Press, Inc. (Carriage), for the sale of Practical's assets to Carriage, resulting in a written agreement dated January 30, 1976. Defendant acted as attorney for Practical in connection with the sale of its assets to Carriage.

The agreement provided for a gross sales price of $85,000, $10,000 down and the balance in 84 monthly installments. The unpaid balance was to be evidenced by a promissory note and secured by:

"A security agreement in the form and substance approved by counsel for Practical together with a proper financing statement for

filing under the Uniform Commercial Code granting Practical a security interest in the equipment sold and transferred hereunder, subject to existing liens, as security for the unpaid purchase price * * *."

The closing of the sale took place on March 8, 1976. While a security agreement and a financing statement were executed on that date, they were not filed with the Illinois Secretary of State until February 28, 1977. On February 1, 1977, Carriage defaulted on its note to Practical, leaving an unpaid balance of $39,760. Prior to this date Carriage had pledged the same assets to American National Bank, which did file its financing statement, and upon default the Bank took possession of the assets and sold them to satisfy Carriage's obligation to it. (Both plaintiffs and defendant have instituted actions against Carriage and its president.)

At his deposition, defendant gave the following testimony. He had practiced law in Chicago since 1960 and was experienced in secured transactions. He was aware that one way to perfect a security interest is to file a financing statement with the Secretary of State.

Defendant had represented Practical and the Schmidts on several prior occasions, but had never been on retainer. In late January or early February 1976, Robert Schmidt advised defendant that he had found a potential buyer for Practical named Philip Whiting. Whiting was the president of Carriage. Schmidt asked defendant to represent Practical and the Schmidts "in consummating or exploring the possibility of the consummation of a contract with Mr. Whiting." No specific details of the transaction were discussed.

Shortly thereafter, defendant met with Stanley Feinberg, Whiting's attorney, to discuss the terms of the sales contract. At this meeting, which was attended by Whiting and the Schmidts, it was decided that defendant would draft a contract for the sale of Practical's real estate, while Feinberg would draft the agreement for the sale of the business. However, there were several documents relative to the sale of the business that defendant was required to draft, including a security agreement and a "UCC statement" or financing statement, "the statement that is recorded with Springfield." Defendant was also to obtain an "estoppel letter" from a creditor, Iroquois Co., which had a security interest in Practical's assets. Mr. Schmidt gave his assurance that he would procure a letter consenting to the sale.

At the closing on March 8, 1976, the parties to the sale executed the contract and other documents, including the security agreement and financing statement prepared by defendant. But toward the end of the closing, Feinberg noted that no letter from Iroquois consenting to the sale had been obtained. Feinberg stated that he would work out the details with Iroquois; in the meantime, Feinberg said, he would keep the security

agreement and financing statement because he did not want them filed until Iroquois had given its written consent. Once he received the consent, Feinberg said, he would file the documents with the Secretary of State. Defendant told the Schmidts "that it would be agreeable to entrust the recording of these documents to Mr. Feinberg." Defendant stated at one point that the Schmidts did not object, and at another that they agreed to the documents being held by Feinberg.

An agreement consenting to the sale was later executed by plaintiffs, Carriage, and Iroquois, on April 7, 1976; defendant did not participate. However, defendant did receive a copy of a letter, dated March 24, 1976, from Iroquois to Feinberg, enclosing a copy of the agreement and suggesting Feinberg discuss with defendant a convenient time and place to execute the agreement. Between the date of the closing (March 8, 1976) and the date of the agreement (April 7, 1976), defendant did have an undetermined number of telephone conversations with Feinberg concerning the financing statement. Defendant could not remember the substance of these conversations, only that he left it to Feinberg to file the documents. Defendant acknowledged that he was not relying on plaintiffs to see that Feinberg made the filings; rather, he was relying on Feinberg. When asked whether it was his view that he had no obligation after the closing to ensure that Feinberg carried through his commitment, defendant stated, "I did follow through. I did call his office as I have said to you." Not until the following February did plaintiffs and defendant learn that the financing statement had not been filed.

Lastly, defendant was asked at his deposition whether in all aspects of his representation of plaintiffs in the sale of their assets, and in doing only what he did do, it was his opinion that he had acted with the care and skill of a reasonably competent attorney in the Chicago area. Defendant's opinion was that he had.

Along with their motion for summary judgment, plaintiffs submitted, *inter alia*, an affidavit by Phillip Gordon, a Chicago attorney with experience in sales of business assets and secured transactions. Gordon's affidavit stated that he had read plaintiffs' motion and the excerpts from defendant's deposition testimony attached thereto, as well as the affidavit of Helen Schmidt relating to Carriage's repledging of the assets and defendant's billing for his services. On the basis of the facts in those materials and his experience, it was Gordon's opinion:

> "* * * that the defendant Jack R. Davis was negligent, and failed to represent his clients with the care and skill required of a reasonably competent attorney practicing in the Chicago area, in the following specific respects:
>
> > a. Mr. Davis failed to accomplish the filing of the Financing Statement with the Secretary of State.

b. Having entrusted the filing of that document to the attorney representing the opposing party (Carriage Press, Inc.), it was Mr. Davis's clear duty to make certain that that attorney did in fact file the document with the Secretary of State. Mr. Davis failed to perform that duty, and instead allowed the document to remain, unfiled, in the possession of the other attorney for a period of approximately eleven months.

c. Having reached an understanding with the attorney for Carriage Press, Inc. that, upon receipt of a so-called "estoppel letter" from the Iroquois Company, that attorney would file the Financing Statement with the Secretary of State, Mr. Davis failed to take adequate steps to hold that attorney to that understanding.

d. It was plainly Mr. Davis's professional duty to his clients either to get the Financing Statement into his own hands and file it, or to require the attorney for Carriage Press, Inc. to do so. Defendant Davis failed his clients by doing neither."

The affidavit then expressed the opinion that defendant was "liable to his clients for * * * his negligence and failure to perform his professional duties with the care and skill of a reasonably competent attorney practicing in the Chicago area."

■■ Section 57 of the Civil Practice Act provides that summary judgment may be rendered only if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57; see generally *Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 10, 360 N.E.2d 510.) Even if the facts are undisputed, if fair-minded persons could draw different inferences from the facts, a triable issue exists. Only when the undisputed facts admit of but a single inference does the issue become one of law. *E.g., Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 1057, 291 N.E.2d 202, citing *Peirce v. Conant* (1964), 47 Ill. App. 2d 294, 300, 198 N.E.2d 555.

■ Because an attorney's duty to his client exists in relation to the scope of the representation sought by the client and undertaken by the attorney (*Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559), we consider that question first. Defendant argues first that differing inferences could be drawn as to whether defendant's employment *ab initio* was broad enough to extend to filing the financing statement. Defendant cites 7 Am. Jur. 2d *Attorney at Law* §175, at 150 (1963), which reads:

"Where an attorney agrees to have certain documents recorded and neglects to do so, he is responsible for any damage resulting from his negligence. But the mere fact that an attorney is employed to prepare papers that are required to be recorded does not make it, without more, the attorney's duty to have them recorded. There must be a special undertaking for this purpose, or the original employment must be broad enough to include it."

It is true defendant was employed to act as plaintiffs' attorney in connection with the sale of plaintiffs' assets, and not specifically to file a financing statement. But the contract for sale itself expressly provided that plaintiffs would receive as security for the unpaid purchase price, "[a] security agreement in the form and substance approved by [defendant] together with a proper financing statement for filing under the Uniform Commercial Code * * *." In his own words defendant was retained for the purpose of "consummating" the contract. He was responsible for drafting and did draft the security agreement and the financing statement, "the statement that is recorded with Springfield," and it was he who saw to their execution. To require a specific direction by clients to their attorney to file such executed documents under such circumstances would be unrealistic. The only possible inference is that defendant's employment was broad enough to encompass the task of filing the financing statement.

■■ Defendant next contends the events at the closing could be construed as absolving him from making the filings. Defendant argues plaintiffs and defendant agreed to let Feinberg file the documents. But the undisputed fact is that defendant advised his clients "that it would be agreeable to entrust the recording * * * to Mr. Feinberg." That his clients assented to his advice cannot absolve defendant from responsibility therefor. Defendant also argues that plaintiffs were handling the whole Iroquois matter themselves. Be that as it may, it is undisputed that defendant was not relying on plaintiffs to see that the financing statement was filed. Moreover, when defendant was asked whether he remained obliged to ensure that Feinberg fulfilled his commitment, defendant stated: "I did follow through. I did call his office * * *." This statement, and the follow-up attempt(s) described, further establish that defendant's employment extended to filing the financing statement. No triable issue of fact on this question exists.

Next we consider another aspect of the question of defendant's duty, the standard of care against which defendant's failure to ensure the filing of the financing statement must be measured. In *Schmidt*, in which this court upheld summary judgment in favor of the defendant in a legal malpractice action, we discussed the applicable principles:

"The law is well settled that an attorney is liable to his client for damages only when he fails to exercise a reasonable degree of care

and skill, and the law distinguishes between negligence and mere errors of judgment. (*Stevens v. Walker & Dexter* (1870), 55 Ill. 141; *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586; *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580.) The question of whether an attorney has exercised a reasonable degree of care and skill is one of fact (*e.g., Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 313 N.E.2d 180), and in Illinois the standard of care against which the attorney's conduct will be measured must generally be established through expert testimony. (*Dorf v. Relles* (7th Cir. 1966), 355 F.2d 488; *Brainerd v. Kates; Brown v. Gitlin; Kohler v. Woolen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677; *Olson v. North* (1934), 276 Ill. App. 457.) However, where "the negligence is so grossly apparent * * * that a layman would have no difficulty in appraising it" (*Bonhiver v. Rotenberg, Schwartzman & Richards* (7th Cir. 1972), 461 F.2d 925, 928, citing, *e.g., Graham v. St. Luke's Hospital* (1964), 46 Ill. App. 2d 147, 158, 196 N.E.2d 355 (medical malpractice)), as where the record discloses such an obvious, explicit, and undisputed breach of the attorney's duty of care as letting the statute of limitations run, expert testimony as to the applicable standard of care will not be required. *House v. Maddox* (1977), 46 Ill. App. 3d 68, 72-73, 360 N.E.2d 580; *cf. Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 454, 261 N.E.2d 21 (giving examples in the medical malpractice context)."

75 Ill. App. 3d 516, 522; see also *Smiley v. Manchester Insurance & Indemnity Co.* (1978), 71 Ill. 2d 306, 375 N.E.2d 118 (holding that a verdict should have been directed against the defendant in a legal malpractice action on the ground that the testimony, including expert testimony, established his negligence as a matter of law).

Defendant's primary contention here goes to the nature and content of the expert testimony on the issue of standard of care. First we consider defendant's argument that the trial court should not have considered plaintiffs' expert's affidavit because it contains conclusions of law, namely that defendant "was negligent" and "is liable to his clients." We agree that these conclusions should not have been included and that the affidavit would not properly have been considered if it contained only such conclusions. (See, *e.g., Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 1056, 291 N.E.2d 202.) But the affidavit contains far more. It sets out the facts on which the expert opinion contained therein is based (the affiant's experience and his reading of the excerpts from defendant's deposition). Then it gives the opinion, which would be competent evidence, that defendant was under a duty to ensure the filing of the financing statement and defendant failed to exercise the care and skill of a

reasonably competent attorney in the Chicago area in failing to perform this duty by either filing it himself or making certain the attorney to whom he entrusted it did. The mere presence of the conclusions complained of was not enough to require exclusion of the entire affidavit. Conclusions are difficult to avoid completely in a professional malpractice context; the cases cited by defendant on this point (*International Society for Krishna Consciousness, Inc. v. City of Evanston* (1977), 53 Ill. App. 3d 443, 368 N.E.2d 644; *Anderson v. Dorick* (1975), 28 Ill. App. 3d 225, 327 N.E.2d ·541) are factually remote and cannot be read to require exclusion in the case at bar.

Defendant also complains that Gordon's affidavit was improper because it relied on excerpts from defendant's deposition. But defendant has not identified any facts, material or otherwise, that were excluded from the expert's consideration. The excerpts, which were attached to plaintiffs' motion for summary judgment, contain all material undisputed facts that would have affected the expert's opinion; therefore defendant's argument is without merit. *Cf. Graham v. St. Luke's Hospital* (1964), 46 Ill. App. 2d 147, 196 N.E.2d 355 (hypothetical question).

The chief issue remaining is whether the deposition testimony of defendant, that in his opinion he performed with the care and skill of a reasonably competent attorney in the Chicago area, was sufficient to create an issue of fact as to the applicable standard of care. If so, summary judgment was improper and the cause must be submitted to a jury. Defendant's brief states that "[i]n the area of medical malpractice by the great weight of authority the defendant may establish standard of care by his own testimony." In the only case cited, the court held that the plaintiff could call the defendant doctor as a witness to establish standard of care. (*McDermott v. Manhattan Eye, Ear & Throat Hospital* (1964), 15 N.Y.2d 20, 255 N.Y.S.2d 65, 203 N.E.2d 469; accord, *e.g., Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 453, 261 N.E.2d 21.) In the only Illinois case cited by defendant (*Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147), the defendant doctor moved for summary judgment and submitted only his own affidavit on the issue of his negligence. Observing that the plaintiff had repeatedly failed to demonstrate he could show negligence on the part of the defendant by expert medical testimony, where the issue was clearly one that could not be determined by laymen alone, the *Hill* court held that there was no basis for rejecting the defendant's affidavit and summary judgment could be granted. (58 Ill. App. 3d 1003, 1008-09.) *Hill* did not otherwise reveal the contents of the defendant doctor's affidavit.

■■ We believe defendant's bald assertion in his deposition that he acted with the care and skill of a reasonably competent attorney in doing only what he did is insufficient to raise a question of fact that must be

submitted to a jury. The statement is not only self-serving, and little better than a denial in defendant's answer; it is totally without a factual basis. Once it is established, as we have done above, that defendant's employment extended to responsibility for filing the financing statement, the only possible issue of fact is whether it is reasonable to entrust the filing of that document to counsel for the other side and then follow through only to the extent of one or two inconclusive telephone calls. It might be different if defendant had buttressed his opinion with a statement that attorneys commonly leave the filing of such documents to attorneys for opposing parties, or with any other factual basis. But the undisputed facts in the record as it stands are susceptible of but a single inference: that defendant failed to exercise reasonable care to ensure the financing statement was filed, in breach of his duty to his client.

Indeed, on these facts we question whether expert testimony was necessary at all. (See *House v. Maddox* (1977), 46 Ill. App. 2d 68, 72-73, 360 N.E.2d 580; compare, *e.g.*, *Schmidt*; *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 786, 386 N.E.2d 586.) *House* dealt with an attorney's conduct in letting the statute of limitations run on his client's claim. The court held that where the record disclosed such an obvious, explicit, and undisputed breach of the attorney's duty of care, expert testimony as to the applicable standard of care would not be required. In the instant case, it is quite possible the common sense of laymen could be relied upon to provide the requisite standard of care. A detailed knowledge of security interests or of professional customs would not be necessary to understand that if a piece of paper must be filed to protect your client's interests, and you entrust that task to an attorney for the other side without adequately following through to see that it is done, it is negligence. At any rate, expert testimony was submitted in the instant case. We believe the trial court could properly grant summary judgment on the basis of plaintiffs' expert's affidavit, despite defendant's conclusory statement to the contrary in his deposition. There is simply no genuine issue of triable fact.

Defendant also complains that he has been deprived of the opportunity to cross-examine plaintiffs' expert witness at trial. But in the absence of a genuine issue as to any material fact, defendant is obviously not entitled to such an opportunity.

Defendant lastly contends that summary judgment was erroneously entered because there is an issue of fact on whether defendant's conduct was the proximate cause of plaintiffs' loss, or whether the intervening act of the debtor's wrongful repledging of the assets broke the causal connection. As Prosser points out, it is often possible and helpful to ask this question with regard to proximate cause: Was the defendant under a duty to protect the plaintiff against the very event that did in fact occur? (Prosser, Torts 244 (4th ed. 1971).) The sole purpose of filing a financing

statement is to protect against the very event that did occur in the case at bar, and but for the failure to file, plaintiffs would not have been injured. We find no issue of fact on the question of proximate cause, as defendant's failure to file constitutes a concurrent cause as a matter of law.

Because there is no genuine issue as to any material fact and plaintiffs demonstrated they were entitled to judgment as a matter of law, the trial court properly entered summary judgment for plaintiffs on the issue of liability. The order of the court is therefore affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.