### A01A0391. TUCKER v. SMITH et al.
(547 SE2d 604)

MIKELL, Judge.

Sandra E. Tucker appeals the trial court's grant of summary judgment to Marion Smith II and Linda Pacer[1] on Tucker's legal malpractice claim. Because Tucker's action is barred by the applicable statute of limitation, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the evidence shows that in September 1984, Tucker, upon the recommendation of members of her church, Dunwoody Baptist Church, Inc. (the "Church"), gave $225,000 to William Russell and Phillip Mayeux to invest in low-risk income-producing investments for her benefit. Russell and Mayeux were agents of Titan Capital Corporation ("Titan"). In February 1989, Tucker learned that Russell and Mayeux had invested her money in high-risk, highly speculative funds. In June 1989, Tucker contacted Smith to discuss her possible causes of action against Russell, Mayeux, Titan, and the Church. On February 8, 1990, Tucker and Smith signed a written retainer agreement, which provided that Smith and Fortson & White (the "Firm") would represent Tucker in her claims against Russell, the Church, and Dunwoody Baptist Church Foundation, Inc.

On February 15, 1990, Smith sent a letter and memorandum to the Church regarding Tucker's proposed action against Russell and the Church. On February 20, 1990, Pacer, Smith's associate, sent a letter to Titan's lawyer in which she states that they, she and Smith,

---

[1] Linda Pacer was formerly known as Linda Luchowski.

[2] (Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

represent Tucker in her claims against Russell, Mayeux, the Church, and Titan. In response to the February 20, 1990 letter, Titan's attorney indicated that Titan was not interested in settling the case.

Pacer deposed that when she sent the letter to Titan's attorney, she and Smith did not represent Tucker in her claims against Titan. They simply sent the letter to see if they could procure a settlement from Titan on Tucker's behalf. Further, Pacer deposed, Tucker knew that the Firm had not agreed to represent her against Titan. During Tucker's deposition, she was asked:

Q. So even though you had not retained them to represent you as to Titan, it was decided at this point, well, heck let's try and see what we can get, see if we can talk them into coming into this, too?
A. Yes, because my original understanding was that Titan would be involved.
Q. Originally, but then you did not retain them originally to represent you against Titan?
A. Right.

On June 8, 1990, Pacer wrote a letter to Tucker explaining the terms of Russell's offer of settlement. In the letter, she states: "Your acceptance of [Russell's] offer would not preclude any action which we may decide to file against either the Church and/or Titan." Russell and the Church reached a settlement of $110,000 with Tucker in March 1991. On March 27, 1991, Tucker retained Smith and the Firm to represent her in an arbitration proceeding against Titan before the National Association of Securities Dealers ("NASD"). Tucker deposed that she understood when signing the agreement that it was not for representation to pursue a federal claim.

On July 15, 1991, Tucker wrote a letter to Pacer which stated: "Please update me on where you are with Titan." On August 9, 1991, Smith and Pacer responded. They advised Tucker that in light of the United States Supreme Court's June 20, 1991 decision in *Lampf, Pleva, Lipkind &c. v. Gilbertson*,[3] her claim against Titan should have been filed no later than mid-September 1987. They wrote: "The Supreme Court's decision effectively prevents us from pursuing any securities fraud claim which you may have had against Titan."

---

[3] 501 U. S. 350 (111 SC 2773, 115 LE2d 321) (1991). On December 19, 1991, President Bush signed Congress' bill amending the Securities Act of 1934 (to be codified as Securities Exchange Act of 1934, § 27A, 15 USC § 78aa-1), which overruled the retroactivity aspect of the *Lampf* holding. *Dept. of Economic Dev. v. Arthur Andersen & Co.*, 1992 U. S. Dist. LEXIS 4586 (April 7, 1992). In *Plaut v. Spendthrift Farm*, 514 U. S. 211 (115 SC 1447, 131 LE2d 328) (1995), however, the Supreme Court held that § 27A of the Securities Exchange Act was unconstitutional.

After receiving the letter, Tucker continued to inquire about her Titan claim. On October 8, 1991, Tucker wrote: "Are you still considering a common law claim against Titan, and where do we stand?" On February 15, 1992, Tucker requested a meeting with Smith and Pacer to discuss her case against Titan. She wrote: "I am anxious to have an update on where we stand and what progress if any has been made." Pacer deposed that Tucker never called about the meeting and that at that time, Pacer did not believe that Tucker thought they were pursuing claims against Titan.

On April 2, 1992, Tucker wrote:

> It was your plan to seek further recovery from Titan after winning the agreement from Mr. Russell. As we discussed last summer, I remain very disconsolate over the U. S. Supreme Court ruling, which seemed to end any hope of future recovery of the monies invested by . . . Titan. Also, subsequent to the Supreme Court [sic] ruling[,] you said this may not be as exclusionary as it first seemed. You were planning to look into this and let me know how we were to proceed.

Pacer deposed that she did not tell Tucker that the *Lampf* decision may not be as exclusionary as it first seemed or that they were planning to look into the matter. Instead, Pacer recalled that she told Tucker that they were monitoring the post-*Lampf* legislation and developments. Pacer deposed that she did not write to Tucker to discuss her misconceptions and could not recall if she telephoned Tucker to discuss them.

On August 11, 1992, Tucker wrote: "I am anxiously awaiting to hear when you plan to resume efforts on my case." On November 16, 1992, she wrote: "With only a little more than one year remaining on the six-year statute of limitation, I am relieved to know that you have plans to move forward with litigation." Pacer could not recall discussing a six-year statute of limitation with Tucker and deposed that she said nothing to Tucker about moving forward with the litigation.

On June 10, 1993, Tucker wrote: "I am eager to know when you will begin the process of moving forward on the third stage of my case against Bill Russell and Titan Capital. . . . Please let me know when and how you plan to approach Titan Capital." On July 19, 1993, Pacer forwarded Russell's final settlement payment to Tucker and wrote: "We . . . will be contacting you within the next few weeks to discuss your claim against Titan." However, Pacer did not contact Tucker again in 1993. On December 21, 1993, Tucker wrote: "It is important for me to know when you plan to press forward with litigation."

Tucker next wrote to Pacer and Smith on February 16, 1994, stating: "I wrote to you in December and to date I have not received a reply. It has become an important issue to know when and how you will proceed with litigation against Titan." Upon receipt of this letter, Pacer deposed that she became worried that "perhaps we were operating under a different premise from [Tucker]." Pacer did not call Tucker after receiving the letter. Instead, she and Smith responded in a letter dated June 15, 1994. In that letter, the attorneys referenced their August 9, 1991 letter wherein they stated that they were unable to file a claim against Titan, advised Tucker that they were unable to do anything further for her, and suggested that she pick up her file from their office. They also stated that because of Tucker's fragile state of mind, they agreed to research the possible, but doubtful, claim against Titan, and if their research yielded no hope, they stood by their August 9, 1991 letter.

Tucker hired counsel to pursue a malpractice claim against Smith and Pacer in April 1996. On March 16, 1998, Tucker filed a complaint against Smith and Pacer.[4] In exchange for Tucker's dismissal of the action, Tucker's counsel and counsel for Smith and Pacer entered a tolling agreement.[5] During oral argument, Smith and Pacer's counsel stated that they entered the tolling agreement because of the possibility that the Supreme Court might adopt the "continuous representation" rule in *Hunter, Maclean, Exley &c., P.C. v. Frame.*[6]

Tucker refiled her complaint on November 13, 1998. On December 6, 1999, Smith and Pacer moved for summary judgment on the grounds that Tucker's malpractice claims were barred by the applicable statute of limitation. In a detailed order, the trial court granted Smith and Pacer's motion. Because our holding on Tucker's second enumeration of error makes it unnecessary to consider her first enumeration of error, we address it first.

1. Tucker contends that the trial court erred in determining that her claim was time-barred because the statute of limitation expired in February 1997. We disagree.

Legal malpractice claims are subject to a four-year statute of limitation.[7] Tucker concedes that her potential claims against Titan expired no later than February 1993. Thus, her malpractice claims against appellees should have been filed by February 1997. However, she argues, the statute was tolled by the appellees' fraud, which she discovered on June 15, 1994. Even if we assume, without deciding,

---

[4] This complaint is not included in the record.

[5] The tolling agreement is not included in the record.

[6] 269 Ga. 844 (507 SE2d 411) (1998).

[7] *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646, 647 (1) (518 SE2d 704) (1999).

that Tucker is correct, the statute of limitation on her claim against appellees expired four years from her discovery of the fraud.[8] However, Tucker did not file her complaint until November 13, 1998, almost four years and five months after she discovered the alleged fraud. Thus, Tucker's claim is time-barred.[9] If the tolling agreement provided additional time for the filing of her complaint, it is Tucker's burden to show it affirmatively by the record.[10] Since she did not, we affirm the trial court's decision.

2. Based upon our holding in Division 1, we need not consider Tucker's first enumeration of error.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2001 —
RECONSIDERATION DENIED APRIL 20, 2001.

*Eidson & Brennan, Timothy R. Brennan,* for appellant.
*Arnall, Golden & Gregory, Ann S. Infinger, Anthony W. Morris,* for appellees.

---

[8] OCGA § 9-3-96.

[9] Even considering appellees' counsel's statement during oral argument on the motion for summary judgment that they entered the tolling agreement pending the Supreme Court's decision in *Frame,* supra, *Frame* was decided on September 14, 1998. We cannot assume that the tolling agreement permitted Tucker to file her complaint as late as November 13, 1998. See *Smith v. Davis,* 76 Ga. App. 154, 159 (2) (45 SE2d 237) (1947).

[10] *Gillespie v. Gillespie,* 259 Ga. 838 (388 SE2d 688) (1990).