S04G0813. BARNES et al. v. TURNER.

(606 SE2d 849)

FLETCHER, Chief Justice.

The issue in this legal malpractice case is what duty attorney David Turner, Jr. owed his client, William Barnes, Jr., with respect to maintaining Barnes's security interest that lapsed. The Court of Appeals held that Turner's only duty was to inform Barnes that his security interest required renewal in five years.[1] Because under that view the statute of limitations expired before Barnes filed his malpractice action, the Court of Appeals affirmed the trial court's decision to grant Turner's motion to dismiss. We conclude, however, that if Turner failed to inform Barnes of the renewal requirement, Turner undertook a duty to renew the security interest himself. The statute of limitations has not expired for an alleged breach of that duty, and therefore we reverse.

On October 1, 1996, Barnes sold his company, William Barnes' Quality Auto Parts, Inc., to James and Rhonda Lipp for $220,000. The Lipps paid $40,000 at the closing and executed a ten-year promissory note in favor of Barnes for the $180,000 balance. The note was secured by a blanket lien on the Lipps's assets. On October 30, 1996, Turner perfected Barnes's security interest by filing UCC financing statements. Viewing the facts in the light most favorable to Barnes (as the non-moving party),[2] Turner did not, however, inform Barnes that under OCGA § 11-9-515, financing statements are only effective for five years, although their renewal for another five years is expressly provided for in that statute. The renewal is effected by filing continuation statements no earlier than six months before the end of the initial period.[3] No renewal statements were filed, and on October 30, 2001, the original statements lapsed.

Unknown to Barnes, the Lipps had pledged the same collateral to F&M Bank and Trust Company and to Mid-State Automotive Distributors on December 28, 1998 and January 29, 2001, respectively. Both of these companies filed UCC financing statements,

---

[1] *Barnes v. Turner,* 265 Ga. App. 6 (593 SE2d 9) (2003).

[2] *Cooper v. Unified Govt. of Athens-Clarke County,* 275 Ga. 433, 434 (2) (569 SE2d 855) (2002).

[3] OCGA § 11-9-515 (c).

which put them in a senior position to Barnes when his financing statements lapsed. Barnes is still owed more than $142,792.09 under the promissory note, and James Lipp is now in Chapter 7 bankruptcy.

Barnes sued Turner for malpractice on October 18, 2002. The trial court granted Turner's motion to dismiss. Finding that the only possible incident of malpractice was Turner's failure to inform Barnes of the renewal requirement in October 1996, the Court of Appeals held that the four-year statute of limitations had run and affirmed the trial court.[4] We granted Barnes's petition for certiorari.

1. Barnes contends that the Court of Appeals erred in simply looking to Turner's actions in October 1996 as constituting the malpractice. If Turner had renewed the financing statements in 2001, Barnes argues, there would have been no lapse in his security interest and thus no malpractice. Barnes contends that Turner's duty was to safeguard his security interest, which Turner could have satisfied by *either* informing Barnes of the renewal requirement or renewing the financing statements in 2001. Under this view, Turner breached his duty in 2001, when he failed to do both, and thus the statute of limitations on Barnes's action has not expired. For the following reasons, we agree.

A motion to dismiss should only be granted if "the allegations of the complaint, when construed in the light most favorable to the plaintiff with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[5] Accordingly, the grant of Turner's motion to dismiss was only proper if Barnes's duty ended in 1996.[6]

Turner contends that he was not retained to file renewal statements. While Georgia's appellate courts have not previously addressed this issue, decisions from other states make clear that an attorney in Turner's position must at least file original UCC financing statements, even absent specific direction from the client.[7] We agree. An attorney has the duty to act with ordinary care, skill, and diligence

---

[4] OCGA § 9-3-25; *Tucker v. Smith*, 249 Ga. App. 305, 308 (1) (547 SE2d 604) (2001).

[5] *Cooper*, 275 Ga. at 434.

[6] The dissent's reliance on *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827 (573 SE2d 389) (2002) is inapposite. In *Pfeiffer*, we held that a party could not seek to reverse a grant of summary judgment by raising a new argument for the first time on appeal. However, this case involved the grant of a motion to dismiss. In reviewing the grant of a motion to dismiss, it is the duty of the appellate court to "construe the pleadings in the light most favorable to [the appellant] with all doubts resolved in [appellant's] favor." *Alford v. Public Svc. Comm.*, 262 Ga. 386, n. 2 (418 SE2d 13) (1992). By considering all the allegations of the complaint, including the failure to renew, this Court is simply applying the correct standard of review.

[7] See *Practical Offset, Inc. v. Davis*, 404 NE2d 516, 520 (Ill. App. 1980). The failure to file a UCC financing statement has even been held to constitute legal malpractice as a matter of law. See *Lory v. Parsoff*, 296 AD2d 535 (N.Y. App. Div. 2002); *Deb-Jo Constr. v. Westphal*, 210 AD2d 951 (N.Y. App. Div. 1994).

in representing his client.[8] In sale of business transactions where the purchase price is to be paid over time and collateralized, it is paramount that the seller's attorney prepare and file UCC financing statements to perfect his client's security interest. We further hold, for the reasons given below, that if the financing statements require renewal before full payment is made to the seller, then the attorney has some duty regarding this renewal. Otherwise the unpaid portion of the purchase price becomes unsecured and the seller did not receive the protection he bargained for.

Safeguarding a security interest is not some unexpected duty imposed upon the unwitting lawyer; it goes to the very heart of why Turner was retained: to sell Barnes's business in exchange for payment. We do not, as the dissent contends, demand that the lawyer "ascertain the full extent of the client's 'objectives'"; only that the lawyer take reasonable, legal steps to fulfill the client's *main, known* objective — to be paid for the business he sold.

The dissent views only the sale of the business as important since this is what happens at the closing; but why does a client sell his business if not to receive payment? When the dissent argues that Turner's duty was simply to "close" the transaction, it fails to recognize that closing this particular transaction meant taking the reasonable steps that competent attorneys would take to legally secure their clients' right to receive payment for the businesses they have sold. Where payment is to be made in less than five years, Georgia law does not require renewal of the initial financing statements and thus the lawyer's duty is only to file the initial statements. But where payment is to take longer than five years, the lawyer — being trusted by his client to know how to safeguard his security interest under Georgia law — has some duty regarding renewal of the financing statements. The question is the nature of that duty.

Under the dissent's view, a client has to specifically ask his lawyer to renew the financing statements for this to be among the lawyer's duties. But how can the client be expected to know of this legal requirement? He hires the lawyer because the lawyer knows the law. The client cannot be expected to explicitly ask the lawyer to engage in every task necessary to fulfill the client's objectives.

The Court of Appeals held that a failure to inform by Turner was the sole possible grounds for malpractice.[9] But this is too narrow a definition of Turner's duty. The duty was not necessarily to inform Barnes of the renewal requirement; often transactional attorneys do

---

[8] *Tante v. Herring*, 264 Ga. 694, 694 (453 SE2d 686) (1994); Restatement (Third) of the Law Governing Lawyers § 16 (2) (1998).

[9] The dissent argues that the failure to inform is not within the scope of our question posed on certiorari and thus does not consider it. But this is incorrect. Our certiorari question asked:

no such thing and simply renew the financing statements themselves. These attorneys have not breached a duty. Turner's duty was to safeguard Barnes's security interest. There were two means of doing so: by informing Barnes of the renewal requirement, or by renewing the financing statements himself in 2001. Either one would have been sufficient to comply with Turner's duty, and any breach of that duty occurred only upon Turner's failure to do both.

Further, if Turner's only duty arose in 1996, then Barnes had to bring suit before the financing statements could even be renewed to comply with the four-year statute of limitations. Barnes contends that any such action would have been dismissed as unripe because he was still a secured party at the time. He is correct. The dissent's view deprives Barnes and any clients in his position of any remedy for malpractice. The dissent's view precludes Barnes from ever maintaining a malpractice suit against Turner, who failed to take a simple, necessary action that will likely leave Barnes without his business and without over 78% of the purchase price he is still owed for that business.

The dissent's hyberbole about the effect of this opinion mischaracterizes our holding, which is based on a unique set of facts: a collateralized, payment-over-time arrangement in exchange for a sale of business where the payment period exceeds the five-year life span afforded to initial financing statements under OCGA § 11-9-515. The lawyer, being retained to protect his client's interests in connection with the sale of his business, is the only party who knows the legal requirements for maintaining the effectiveness of the security interest. He can either share this knowledge with his client — a very simple step — or renew the financing statements before they expire — an equally simple step. The dissent's concern over the expansion of attorney duties is unwarranted.

2. The dissent also argues that imposing a duty to renew on Turner is an adoption of the "continuous representation rule," which Georgia courts have rejected except in personal injury cases.[10] Under

---

Whether the statute of limitation began to run on petitioner's malpractice claim in October 1996 when Turner assumed the on-going duty to renew the UCC forms or when Turner breached that on-going duty in October 2001 or must the breach necessarily relate back to the date on which the on-going duty was assumed?

The only possible way for Turner to have assumed a duty to renew was by failing to inform Barnes of the renewal requirement; therefore, the question assumes that he so failed to inform Barnes. Both parties argued the failure to inform in their briefs and at oral argument. Turner's actions in 1996 are integral to understanding the duty he undertook in 2001, and were clearly contemplated by our certiorari question.

[10] See, e.g., *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (2) (368 SE2d 732) (1988); *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806-807 (2) (273 SE2d 16) (1980); *Stocks v. Glover*, 220 Ga. App. 557, 558-559 (1) (469 SE2d 677) (1996).

this rule, a continuing relationship or continuing wrong can toll the statute of limitations.[11] In the case cited by the dissent, *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*,[12] the alleged malpractice was only that material financial information was omitted from the closing documents; there was not, as in the present case, some further action beyond the closing at issue, and thus *Hunter, Maclean* is inapposite to our situation. The continuous representation rule is not implicated in this case. We are *not* holding that a failure to inform by Turner in 1996 was a continuing wrong that tolled the statute of limitations until 2001. To the contrary, we are holding that a failure to inform in 1996 means that Turner undertook a duty to renew in 2001, and the statute of limitations began running from the date of alleged breach of *that* duty.[13]

In light of the foregoing considerations, we reverse the Court of Appeals's decision that affirmed the trial court's grant of Turner's motion to dismiss. Barnes's malpractice action was filed within four years of the failure to renew the financing statements in 2001, and thus may proceed.

*Judgment reversed. All the Justices concur, except Benham, Thompson and Hines, JJ., who dissent.*

BENHAM, Justice, dissenting.

For the purpose of ensuring recompense for a client who may have been caused a grievous financial loss by his attorney's alleged failure to perform a simple duty, a majority of this court has ignored pertinent law and created a new species of duties which arise not from employment but from the occurrence of an initial mistake.

The central question in this legal malpractice case concerns the duty undertaken by Turner when he represented Barnes and his corporation in the sale of a business. The majority opinion begins with a statement of the issue which supposes the ultimate question by starting from the premise, as did the question posed in the grant of the writ of certiorari and set out in the majority opinion, that Turner owed a duty to maintain, as opposed to create, a security interest for Barnes. The holding of the majority opinion that Turner owed a duty to renew the security interest when it expired is thus based not on reasoning or the law, but on an unsupported assumption.

"It is axiomatic that the element of *breach* of duty in a legal malpractice case — the failure to exercise ordinary care, skill, and

---

[11] *Everhart v. Rich's, Inc.*, 229 Ga. 798 (194 SE2d 425) (1972).

[12] 269 Ga. 844, 849 (507 SE2d 411) (1998).

[13] The sole issue before us is the scope of the duty allegedly breached. Therefore, we do not address the other elements of Barnes's malpractice claim: breach of duty, causation, and damages. See, e.g., *Tante*, 264 Ga. at 694.

diligence — must relate directly to the *duty of the attorney, that is, the* duty to perform the task for which [the attorney] was employed." *Tante v. Herring*, 264 Ga. 694 (1) (453 SE2d 686) (1994). Here, the task for which Turner was employed was to perform the services attendant to the closing of the sale of the business, including filing the UCC financing statements. He breached the duties arising from that employment, or did not, at that time. If he had a duty to inform Barnes of the need in the future to renew the statement, and did not do so, he breached the duty then and his potential liability came into existence.[14] The record shows that Barnes asserts he continued to employ Turner for legal tasks, but not that Turner was engaged on an ongoing basis to protect Barnes's interests in all legal matters which arose or might have arisen. To assert Turner had a duty arising from his representation during the closing which would not manifest itself for five years "would essentially be an adoption of the 'continuing representation rule,' which has been consistently rejected by Georgia courts in the malpractice context. . . ." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 849 (507 SE2d 411) (1998).

The majority, however, imposes as a matter of law duties which were not undertaken by Turner and were not within the scope of his employment to close the sale of the business. The majority holds the asserted failure to inform Barnes of the future need to renew the UCC statements somehow created a duty on Turner's part to renew the filings without having been retained to do so. The majority thus creates new duties that could outlast not only the period of the attorney-client relationship, but even the attorney's life. In addition, by attaching to the asserted breach of one duty the conditional creation of a new and potentially more onerous duty, the majority destroys any notion of finality attorneys may hope to have in any aspect of their employment. No attorney can safely close a file and, apparently, no passage of time can insulate a mistake since the very happening of a mistake creates, under the majority's view, another duty. Under the conditional duty concept created from the whole cloth by the majority, for which no authority or valid reasoning is offered, any change in employment status must trigger a full examination of every past transaction to be sure some inadvertence in the past has not created a new duty which would start a period of limitation running again.

---

[14] The correctness of the decision of the Court of Appeals that the statute of limitation barred Barnes's claim based on Turner's failure to inform Barnes of the need to renew the filing is not within the scope of the question posed, which clearly dealt only with the duty to renew which the majority wrongly assumes, and should not be considered in this appeal. See *Handson v. HCA Health Svcs. of Ga.*, 264 Ga. 293, n. 1 (443 SE2d 831) (1994).

Not only does this new duty, which can only be ascertained to have existed after damage from an original mistake has manifested, and perhaps (though the majority opinion is unclear on the point) after the expiration of the period of limitation has barred suit for the first mistake, add to every attorney's potential liability to clients, it adds such uncertainty and lack of finality to every transaction that malpractice insurance carriers will be unable to make accurate assessments of their exposure. This will inevitably result in higher premiums, which will necessarily be passed on to clients. In addition to adding to the direct expense of legal representation, the increase in premiums and the need to institute greater safeguards to avoid liability will result in further consolidation of the practice of law in larger and larger firms because they will have greater resources to help prevent any oversight, and will require contracts of employment that stringently restrict the scope of representation by use of disclaimers intended to protect attorneys from any responsibility to clients other than the most narrow definition of the tasks for which attorneys are employed. The damage wrought by these restrictions will fall most heavily on the very class to which the plaintiff in this case belongs and which the majority purports to wish to protect, the proprietors of small businesses.

The majority's resolution of the present case is not just shortsighted from a policy standpoint, but lacks a rational basis. It cites foreign authority for a proposition not contested by anyone, that Turner had a duty to file the financing statements, which he did, and then vaults without reasoning or authority to the creation of an additional duty to safeguard the security interest just created. It is at that point the majority invents, as noted above, a duty to "provide for payment to Barnes." Thus, the simple act of performing the duty to create a security interest becomes a duty of indeterminate duration to ensure the payment of the obligation secured. To justify such a vast extension of the attorney's duty, the majority suggests that the duty is not, as this Court held in *Tante v. Herring*, supra, "the duty to perform the task for which [the attorney] was employed," but is rather, in some unspecified fashion, to ascertain the full extent of the client's "objectives" in undertaking the transaction and then take whatever actions are necessary to see that the objectives are fulfilled. Apparently, the majority has created a new standard of care to be employed in reviewing an attorney's success in ferreting out and guaranteeing accomplishment of all of a client's objectives: what lawyers often do. That has never been the standard of care employed in legal malpractice cases and should not be applied here as the majority does.

That the majority's approach here is dictated by a desired result rather than by law or reason is apparent from its frequent return to

the lament that without the creation of this new duty to take all possible steps to guarantee payment of the obligation owed to the client, Barnes will not be able to recover his losses because the statute of limitation bars recovery for the breach of Turner's duty to inform Barnes of the need to renew the financing statements in the future. That issue was resolved in the Court of Appeals and, as noted above, is not properly within the scope of the question posed by the Court in granting the writ of certiorari. Thus, the issue is not properly before us and, even if it were, would not warrant the creation of a new duty to avoid the unfortunate effect the correct application of statute-of-limitation law has had on Barnes.

Finally, it must be noted that the question of a duty to renew was properly omitted from the Court of Appeals' consideration of this case and should never have been taken up by this Court for the simple reason that it was not litigated below. The majority seeks to avoid this problem with a reference to the pleadings, but ignores the fact that the trial court did not rule on that claim and the Court of Appeals, whose judgment we purport to review, did not rule on that issue. As this Court held in *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002),

> our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. " 'To consider the case on a completely different basis from that presented below . . . would be contrary to the line of cases . . . holding, "He must stand or fall upon the position taken in the trial court." ' " Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.

(Footnotes omitted.) While Barnes raised in an initial pleading and in a written response to the motion to dismiss the assertion that Turner had a duty to renew the financing statements, that issue was not addressed in the actual defense of the motion and was not decided by the trial court. Notwithstanding the lack of any ruling on the issue below, a majority of this Court bases its judgment on it, becoming in effect a "super trial court" with authority to decide issues for the first time. That is not the proper role for this Court.

Notwithstanding the twists and turns employed by the majority to reach its desired result, this case is simple. Turner was employed to close a commercial transaction. Whatever duty he undertook was in connection with that employment and was breached or not at that time. There being no duty to renew the UCC statements in 2001, Turner's failure to do so could not constitute a breach of duty which would support the legal malpractice claim against him. That being so,

no basis exists for reversing the judgment of the Court of Appeals or of the trial court. I must, therefore, dissent to the majority's result-oriented distortion of legal malpractice law to create a new duty of indeterminate duration which arises only upon the breach of an earlier duty.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED NOVEMBER 23, 2004 —
RECONSIDERATION DENIED DECEMBER 9, 2004.

*Jones, Jensen & Harris, Taylor W. Jones, Richard E. Harris*, for appellants.

*Carlock, Copeland, Semler & Stair, Johannes S. Kingma, John C. Rogers*, for appellee.