[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13642
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-00193-MHC

LUCKY CAPITAL MANAGEMENT, LLC,

Plaintiff-Appellant,

versus

MILLER & MARTIN, PLLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 18, 2020)

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Lucky Capital Management, Inc. ("Lucky") appeals the grant of summary judgment in favor of Miller & Martin, PLLC regarding their legal malpractice claims.  After a review of the record, we affirm.

## I.    Background
*Procedural History*

This appeal is the second occasion this case has been before this Court.  In January 2014, Lucky filed its initial complaint against Miller & Martin.  Subsequently, it filed an amended complaint which alleged six counts of misconduct, including fraud, legal malpractice, civil conspiracy, and breach of fiduciary duty.  The district court dismissed three of Lucky's claims, including its legal malpractice claim.  The district court dismissed that claim because it concluded that the malpractice claim was not assignable to Lucky, which had not directly employed the law firm.  After discovery, the district court granted summary judgment to Miller & Martin on the remaining counts.  Lucky appealed the grant of summary judgment and dismissal of its claims.

On appeal, a panel of this Court affirmed the grant of summary judgment and dismissal of most of Lucky's claims but reversed the dismissal of the legal malpractice and civil conspiracy claims.  *See Lucky Capital Mgmt., LLC v. Miller & Martin & Martin*, *PLLC*, 762 F. App'x 719, 723, 727 (11th Cir. 2019).  As to the legal malpractice claim, the panel concluded that it was based on "alleged professional negligence," rather than intentional fraud, and therefore was

2

assignable under Georgia law. *See id.* at 723–24 (citing O.C.G.A. § 44-12-24).

Thus, this Court remanded the case to the district court to consider the merits of the

legal malpractice claim in the first instance. On remand, the district court granted

summary judgment in favor of Miller & Martin on that claim, and this appeal

followed.[1]

*Factual Background*

We draw the following summary of the facts leading up to this litigation

from our prior opinion in this case:

> In April 2010, [the company] nValeo engaged Miller & Martin &
> Martin to perform legal services. Miller & Martin & Martin did not
> act as general counsel to nValeo, and it billed nValeo for its legal
> services on an hourly basis. Jeffrey Ritchie was the managing member
> of nValeo. W. Scott McGinness, Jr. and R. Tyler Hand were among
> the Miller & Martin & Martin attorneys who worked on nValeo
> matters.
>
> In May 2010, principals of what was to become Lucky began
> negotiations with nValeo for Lucky to purchase a membership interest
> in nValeo. Lucky conducted these negotiations through its counsel
> and nValeo did the same through Miller & Martin & Martin. The
> parties reached an agreement, which culminated in nValeo and Lucky
> entering into a Membership Interest Purchase Agreement (the
> "MIPA") on June 7, 2010. Pursuant to the MIPA, Lucky paid
> $500,000 for a 2% membership interest in nValeo.

---

[1] Miller & Martin also moved for summary judgment on the civil conspiracy claim, which this Court had remanded to the district court following its improper dismissal at the motion to dismiss stage. Lucky did not oppose Miller & Martin's motion for summary judgment as to that claim, and the district court granted it. Therefore, Lucky does not appeal the dismissal of the civil conspiracy claim.

On July 26, 2010, Lucky and nValeo entered into an Amended and Restated Membership Interest Purchase Agreement (the "AMIPA"). Under the AMIPA, Lucky acquired an additional 9% membership interest in nValeo by making four $500,000 investments in the company.  In addition, the AMIPA imposed limits on compensation of nValeo's officers and prohibited the payout of officers' bonuses.  The AMIPA did not contain any prohibition on nValeo making loans to its officers.

The MIPA and AMIPA contained identical provisions disclosing the lack of a financial track record for nValeo and the "substantial investment risks" in purchasing the membership interests.  Despite this, Lucky did not inspect nValeo's books before investing.

Between July and December 2010, Lucky invested a total of $2 million in nValeo.  The parties acknowledge that almost immediately after Lucky's funds were deposited in nValeo's bank account Ritchie began withdrawing those funds for his own personal use.

On September 6, 2010, nValeo's Chief Operations Officer, Buddy Poole,[2] sent an email to Hand, copying McGinness, stating:

> Tyler I need to get the paperwork to record Jeff [Ritchie] taking out loans from the company which he has needed to do from time to time to get moved to Austin, Tx. Please give me a call on Tuesday so we can discuss the details.  Thanks.

On September 28, 2010, Hand sent Poole a Revolving Line of Credit Promissory Note (the "Promissory Note") for Ritchie's signature.  The Promissory Note purported to allow nValeo to loan Ritchie up to $2 million.

In March 2011, Chad Smith, one of Lucky's principals, reviewed the financial records of nValeo for the first time.  He saw Ritchie's withdrawals, which Poole had recorded. Smith confronted Ritchie about the withdrawals, and Ritchie admitted that he took over $800,000 and used at least part of the money for personal use.  nValeo

---

[2] We note that some time in 2010, Poole became a part owner of nValeo.

4

never brought a product to market and went out of business.  When the company failed, Lucky lost its investment.  Lucky sued nValeo for its damages and, as part of the settlement of that litigation, nValeo assigned to Lucky any legal malpractice claim it might have against Miller & Martin & Martin.  The underlying litigation followed.

*Lucky Capital*, 762 F. App'x at 721.

On remand, Miller & Martin moved for summary judgment.  Rather than submit new evidence to support its legal malpractice claim, Lucky chose to rely primarily on the affidavit of its expert witness, Thomas Scott, Esq., who concluded that Miller & Martin attorneys "failed to exercise ordinary care, skill and diligence," in order to establish  a sufficient factual controversy to survive summary judgment.[3]  The district court found that this affidavit did not establish a genuine dispute of material fact and thus summary judgment for Miller & Martin was appropriate.  The only question for us on review is whether the district court was correct to say that the affidavit did not create a genuine dispute of material fact as to Lucky's legal malpractice claim.

## II.     Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same legal standards used by the district court."  *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233–34 (11th Cir. 2001).  Summary

---

[3] Lucky also cited to portions of deposition testimony from nValeo and Lucky employees that established the same facts at issue in the prior appeal.

5

judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982)).

## III.    Discussion

Lucky argues that it presented sufficient evidence through the affidavit of its expert witness to support its theory of malpractice—that Miller & Martin should have realized Ritchie, nValeo's managing member, was embezzling from nValeo when Miller & Martin was asked by Poole, nValeo's COO, to prepare a promissory note to document loans from nValeo to Ritchie.

Lucky brings its legal malpractice claim under Georgia law. "In a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." *Fortson v. Hotard*, 684 S.E.2d 18, 20 (Ga. App. 2009) (quoting *Perry v. Ossick*, 467 S.E.2d 604, 606 (Ga. App. 1996)). "There is a

presumption that the legal services of an attorney are performed in an ordinarily skillful manner and the burden is on the one receiving such services to show a lack of due care, skill and diligence, in a malpractice action." *Rogers v. Norvell*, 330 S.E.2d 392, 386 (Ga. App. 1985).

We agree with the district court that certain "findings . . . made by the appellate court" on the first appeal guide our consideration of the legal malpractice claim this time around. When this case was first before us on appeal, we specifically rejected Lucky's contention that the evidence assembled—(1) a "vague voicemail" left by nValeo's CPA for one of Martin & Miller's attorneys asking how to classify the loans taken out by Ritchie and (2) testimony from Poole that failed to establish nValeo was not permitted to make loans to its executives—made Miller & Martin aware of Ritchie's misappropriation of nValeo's funds. *See Lucky Capital*, 762 F. App'x at 728–29; *see also id*. at 729 ("Lucky has failed to provide any evidence that Miller & Martin was aware of Ritchie's misappropriations."). Because the prior panel ruled that there was insufficient evidence to demonstrate knowledge or intent on the part of Martin & Miller with regard to Ritchie's embezzlement of funds, the only theory of malpractice—and the one we found the complaint alleged, *see id.* at 724—which was available on remand was based on negligence. In other words, plaintiffs had to produce evidence that the attorneys

7

from Miller & Martin *should have known* that Ritchie was intending to steal money from nValeo.

Lucky's assembled evidence, however, does not demonstrate that the attorneys should have known that Ritchie's "loans" from the company were fraudulent. We note that Lucky's burden under Georgia law was heavy because Georgia recognizes that "the legal profession is at best an inexact science," and so "a breach of duty arises only when the relevant, i.e., [sic] legal principles or procedures are well settled and their application clearly demanded, and the failure to apply them apparent; otherwise, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results." *Hughes v. Malone*, 247 S.E.2d 107, 111 (Ga. App. 1978). Nothing that Lucky presented demonstrated that Miller & Martin did not follow "well settled" legal principles or procedures.

Lucky relied primarily[4] on its expert affidavit submitted by Thomas Scott, Esq., to establish Miller and Martin's negligence. An expert affidavit is required by Georgia law to file a claim of legal malpractice. *See* O.C.G.A. § 9–11–9.1. Lucky contends that by satisfying the requirements of Georgia law, its expert

---

[4] As noted *supra*, n. 2, the only other evidence cited by Lucky is the deposition testimony establishing the basic facts chronicled by our former panel. No new evidence was produced. Because the cited portions of depositions are not facts in dispute, and because the facts form the basis for the expert opinion, we do not address the duplicative evidence separately.

8

affidavit must be evaluated by a jury.  In arguing that Scott's expert conclusion on legal malpractice alone is sufficient to defeat the motion for summary judgment, Lucky confuses a *necessary* evidentiary condition for legal malpractice claims with a *sufficient* one.  In fact, at least one Georgia court has explicitly held that "an affidavit which satisfies the *pleading* requirements of OCGA § 9–11–9.1 will not necessarily satisfy the *evidentiary* requirements of OCGA § 9–11–56."  *Turner v. Kitchings*, 406 S.E.2d 280, 281 (Ga. App. 1991).  Thus, we are not bound to find a dispute of material fact merely because Lucky provided an affidavit from a legal malpractice expert.  Instead, we examine the expert affidavit itself to see if a genuine dispute of material fact is presented.

At the outset, we note that the primary conclusion of Scott's affidavit—that Miller & Martin *knew* Ritchie was stealing money—is negated by our prior panel holding under the law-of-the-case doctrine.  *See Lucky Capital*, 762 F. App'x at 729; *Stoufflet v. United States*, 757 F.3d 1236, 1240 (11th Cir. 2014) (explaining that the "law-of-the-case doctrine" prevents "relitigation of issues that a court necessarily or by implication decided against the litigant" in a prior direct appeal). What is left in the affidavit is a cursory argument for negligence.  According to Scott, Miller & Martin's preparation of the promissory note was negligent because nValeo's operating agreements "prohibited" its managing members—such as Ritchie—from "withdrawing monies or assets from the company in excess of their

stated salaries and without the consent of other members," and therefore, the September 6, 2010 email from Poole asking Hand to draft a promissory note put Miller & Martin on notice that Ritchie's use of company funds was "improper." The entire basis of Scott's expert opinion was his interpretation of the AMIPA, which is a legal question we review *de novo*.  *See Parris Props., LLC v. Nichols*, 700 S.E.2d 848, 852 (Ga. App. 2010).  However, our prior panel (as well as the district court) concluded that the AMIPA did not, in fact, prohibit nValeo's officers from taking out loans from the company.  *See Lucky Capital*, 762 F. App'x at 728 n.7 (concluding that "nValeo could properly make loans to its executives"). Furthermore, the record indicates that Miller & Martin were not general counsel to nValeo and only performed discrete tasks for them, such as drafting a promissory note.  Therefore, given the limited scope of Miller & Martin's representation, there is no evidence that the attorneys would have had any reason to be on guard against possible misappropriation of funds.  *See Barnes v. Turner*, 606 S.E.2d 849, 851(Ga. 2004) (lawyers are responsible to "take reasonable, legal steps to fulfill the client's *main, known* objective" in their representation) (emphasis in original). Instead, the attorneys depended on representations from their client—in this case, Poole, a part owner and the COO of nValeo—to conduct their legal practice.  For this reason, it was not negligent for Miller & Martin to prepare a legal document formalizing a loan not prohibited by nValeo's governing documents at Poole's

10

request.  With no material facts in dispute, and with no evidence of negligence other than the conclusions in Scott's expert affidavit, Lucky has not presented evidence of legal malpractice that establishes a dispute of material fact and thus cannot survive Miller & Martin's motion for summary judgment.

**AFFIRMED.**