NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PHYLLIS A. HUSTER,**
*Plaintiff-Appellant*

**v.**

**J2 CLOUD SERVICES, INC., ADVANCED MESSAGING TECHNOLOGIES, INC., UNIFIED MESSAGING SOLUTIONS, LLC, ACACIA PATENT ACQUISITION, LLC, CHARLES R. BOBO, II,**
*Defendants-Appellees*

---

2016-1639

---

Appeal from the United States District Court for the Northern District of Georgia in No. 1:14-cv-03304-ELR, Judge Eleanor L. Ross.

---

Decided: March 29, 2017

---

PHILIP P. MANN, Mann Law Group, Seattle, WA, argued for plaintiff-appellant.

BRIAN RAY ENGLAND, Sullivan & Cromwell LLP, Los Angeles, CA, argued for defendants-appellees j2 Cloud Services, Inc., Advanced Messaging Technologies, Inc., Unified Messaging Solutions, LLC, Acacia Patent Acquisition, LLC. j2 Cloud Services, Inc., Advanced Messaging

Technologies, Inc. also represented by ROBERT A. SACKS; DAN ROBERT GRESHAM, Thomas Horstemeyer LLP, Atlanta, GA.

PETER SCHOENTHALER, Schoenthaler Law Group, Atlanta, GA, argued for defendant-appellee Charles R. Bobo, II. Also represented by ROBERT SCOTT JOHNSON, Law Office of Scott Johnson, PC, Atlanta, GA.

EDWARD R. NELSON, III, Nelson Bumgardner PC, Fort Worth, TX, for defendant-appellee Unified Messaging Solutions, LLC. Also represented by THOMAS CECIL; TIMOTHY EDWARD GROCHOCINSKI, Orlando Park, IL.

MARC J. SCHNEIDER, Stradling Yocca Carlson & Rauth, P.C., Newport Beach, CA, for defendant-appellee Acacia Patent Acquisition, LLC. Also represented by SARAH S. BROOKS, Santa Monica, CA.

---

Before LOURIE, O'MALLEY, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge*

Phyllis Huster asserts that she is the inventor or co-inventor of certain systems and methods claimed in nine patents—U.S. Patent Nos. 5,675,507, 5,870,549, 6,350,066, 6,564,321, 6,857,074, 7,895,306, 7,836,141, 7,895,313, and 7,934,148. In August 2013, Ms. Huster sued Charles R. Bobo, II, who is the sole person named as inventor on the patents, and several alleged patent assignors, assignees, and licensees. She asserted a claim for correction of inventorship, under 35 U.S.C. § 256, and various state-law claims. The Northern District of Georgia dismissed Ms. Huster's correction-of-inventorship claim for lack of standing and held, on summary judgment, that the applicable statute of limitations barred the state-law claims relevant here. We modify the dismissal

of Ms. Huster's correction-of-inventorship claim to be without prejudice and affirm the judgment as modified.

I

The '507, '549, '066, '321, '074, '306, '141, '313, and '148 patents describe and claim systems and methods for storing, delivering, and managing electronic messages. The patents discuss, among other things, "facsimile messages" transmitted over "the Internet." *See, e.g.,* '507 patent, col. 5, lines 15–16. The patents issued from continuations of U.S. Patent Application No. 08/431,716, and they all name Charles R. Bobo, II, as the inventor. The '716 patent application claims a filing date of April 26, 1995.

Ms. Huster alleges that before December 1994, she "conceived the idea of transmitting and storing telefax messages digitally, via e-mail rather than as packets via the switched telephone network" and "built a prototype for a system to allow voicemail and faxes to be centrally received, stored, and then distributed . . . to facilitate one or more people's access to the information in those faxes and voicemails." *See* Corrected Amended Compl. ¶ 14, *Huster v. j2 Global Commc'ns, Inc.*, No. 1:14-cv-3304-ELR (N.D. Ga. Feb. 12, 2015), ECF No. 128. She further alleges that in December 1994, Mr. Bobo retained her as a consultant and shareholder for NetOffice, Inc., which he operated. *Id.* ¶ 15. According to Ms. Huster, Mr. Bobo was "not familiar" with the technology related to the invention. *Id.* ¶ 16.

In January 1995, Ms. Huster and Mr. Bobo allegedly agreed to be named as co-inventors on a patent application for the claimed inventions (which was filed as the '716 application). *Id.* ¶ 18. Ms. Huster asserts that Mr. Bobo expressed that he was "very reluctant to file any patent applications" because of "cost" and "time limitations" and that, as a result, she arranged financing for the application and conducted initial contacts with patent

counsel. *Id.* ¶ 19. Shortly thereafter, Ms. Huster took employment elsewhere in Atlanta, and later she moved outside Georgia. *Id.* ¶ 20. According to Ms. Huster, Mr. Bobo and patent counsel stopped communicating with her, and she concluded that they had not proceeded with the application because of Mr. Bobo's "reluctance." *Id.* ¶ 21. As indicated on the patents, the initial patent application was filed in 1995, and the last was filed in 2006. The patents issued between 1997 and 2011. Ms. Huster claims that she first learned of (some of) the patents in March 2010, when she was contacted by an attorney representing a party that had been sued for infringement. *Id.* ¶ 29.

In February 2012, before filing the present case, Ms. Huster assigned her interest in the patents to "Phyllis Anke Technologies, LLC." J.A. 781–85. Ms. Huster acknowledges that "PA Technologies LLC" and "Phyllis Anke Technologies, LLC" are the same entity. *See* Appellant's Reply Br. 6–8.

In August 2013, Ms. Huster brought this suit in the Northern District of Illinois against Mr. Bobo and several companies—j2 Cloud Services, Inc., Advanced Messaging Technologies, Inc. (AMT), Unified Messaging Solutions, LLC, and Acacia Patent Acquisition, LLC. The corporate defendants are alleged assignors, assignees, or licensees of the patents. Ms. Huster asserted a correction-of-inventorship claim under 35 U.S.C. § 256, *see Chou v. Univ. of Chi.*, 254 F.3d 1347, 1357 (Fed. Cir. 2001), as well as unenumerated claims under state law. The court transferred the case to the Northern District of Georgia. In February 2015, Ms. Huster amended her complaint to state claims for fraudulent concealment, breach of fiduciary duty, unjust enrichment, breach of contract, breach of private duty, conversion, breach of duty of good faith and fair dealing, and attorney's fees. *See* Corrected Amended Compl. ¶¶ 43–77.

In March 2014, while the present case was pending, a Washington superior court entered a default judgment for $39,393.49 against Ms. Huster in favor of John Crossan, her former attorney. *See* Default J., *Crossan Intellectual Prop. Law, LLC v. Huster*, No. 14-2-05468-8 SEA (Wash. Super. Ct. Mar. 4, 2014), Dkt. No. 11. In June 2014, the court issued a conditional "charging order" divesting Ms. Huster of "any right, title, and interest, whether direct or indirect, in PA Technologies LLC" until the satisfaction of the judgment. Order Charging Debtors' Interest in Companies 2, *Crossan Intellectual Prop. Law*, No. 14-2-05468-8 SEA (Wash. Super. Ct. June 12, 2014), Dkt. No. 30 (Charging Order).[1]

In November 2015, the district court in this case, acting under Federal Rule of Civil Procedure 12(b), dismissed Ms. Huster's correction-of-inventorship claim for lack of Article III standing. The court also dismissed certain state-law claims for failure to state a claim. *See* Order, *Huster*, No. 1:14-cv-3304-ELR (N.D. Ga. Nov. 12, 2015), ECF No. 164 (Dismissal Order). With respect to Ms. Huster's correction-of-inventorship claim, the court concluded that the Washington state court's charging order had divested Ms. Huster of any economic interest in the patents. *Id.* at 8–10. The court also concluded that Ms. Huster had not pleaded sufficient facts to establish a concrete reputational interest. *Id.* at 10–11. With respect to Ms. Huster's state-law claims, the court dismissed all of Ms. Huster's claims against the corporate defendants and her conversion and attorney's fees claims against Mr. Bobo. *Id.* at 12–22. The court converted Mr. Bobo's

---

[1] The corporate defendants assert that Mr. Crossan's interest in the state court's charging order was subsequently assigned to defendant AMT. *See* Corporate Defs.' Br. 9 n.6. They do not argue, however, that the asserted assignment changes the standing analysis here.

motion to dismiss Ms. Huster's remaining claims into a motion for summary judgment. *Id.* at 23–24.

In January 2016, the court, acting under Federal Rule of Civil Procedure 56, granted summary judgment for Mr. Bobo on the remaining state-law claims, which it concluded were barred by the statute of limitations. *See* Order, No. 1:14-cv-3304-ELR (N.D. Ga. Jan. 28, 2016), ECF No. 170 (Summ. J. Order). The court determined that the applicable limitations period was four years and that Ms. Huster was not entitled to tolling. Ms. Huster's 2013 suit fell well outside the four-year period, the court held, because Ms. Huster was aware of her causes of action as early as 1996 and, alternatively, had not acted with reasonable diligence in discovering her causes of action. *Id.* at 6–15.

Ms. Huster appeals the district court's dismissal of her correction-of-inventorship claim for lack of Article III standing and its grant of summary judgment for Mr. Bobo on the state-law claims that were rejected based on the statute of limitations. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

### A

We review without deference the district court's dismissal for lack of standing to assert the correction-of-inventorship claim. *See Chou*, 254 F.3d at 1355. We agree with the district court's conclusion that Ms. Huster lacked standing to assert that claim.

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see Chou*, 254 F.3d at 1357. The benefit of the

suit to the plaintiff must relate to the alleged injury, *see Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772–73 (2000), and the alleged injury must consist of "'an invasion of a legally protected interest' that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560). This holds regardless of whether the alleged injury is tangible or intangible. *See id.* at 1549; *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In this case, we conclude, Ms. Huster has not satisfied that burden with respect to either of her asserted interests.

1

In the district court, Ms. Huster did not allege sufficient facts to establish an economic interest in obtaining inventorship or co-inventorship status. The district court found, based on the record, that Ms. Huster in August 2012 assigned her interests in the patents to Phyllis Anke Technologies, LLC and that the June 2014 state-court charging order then divested her of any interest in that company. Dismissal Order 8–10. Because the record gives no reason for us to question those findings, we conclude that, at present, Ms. Huster has not alleged that she has anything cognizable to be gained from being listed as an inventor.

On appeal, Ms. Huster alleges two grounds for the asserted economic interest: that, in February 2012, Yahoo agreed to pay her $25,000 for a license to the patents if she were added as an inventor, Appellant's Br. 30; J.A. 961; and that the state court's charging order is based on a debt of $39,393.49, whereas the value of her (indirect) interest in the patents "easily eclipses" that amount,

Appellant's Reply Br. 8. Whatever the merits of those arguments, however, Ms. Huster cannot rely on them now. She did not present those contentions to the district court, and unpreserved contentions generally will not be considered for the first time on appeal. *See FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993) ("By well settled convention, appellate courts generally will not consider an issue or theory that was not raised in the district court."); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction."). We see no reason to disregard that principle here.

Furthermore, Ms. Huster's new appellate contentions are, as presented, insufficient to establish the economic interests that she asserts. Ms. Huster has not alleged or presented evidence that her interest in the Yahoo licensing agreement survived both her assignment of her patent rights to Phyllis Anke Technologies, LLC and the subsequent state-court charging order.[2] By its own terms, Ms. Huster's assignment transferred her "entire right, title and interest, including the right to sue for past infringement and to collect for all past, present and future damages," in the inventions to Phyllis Anke Technologies,

---

[2] We need not explore whether, putting aside the assignment and the charging order, the alleged Yahoo promise to pay Ms. Huster based on the outcome of a correction-of-inventorship suit would suffice for standing. *See Vt. Agency of Nat. Res.*, 529 U.S. at 772–73 (explaining that an interest in the outcome for standing must be related to the injury in fact that gave rise to the plaintiff's cause of action and not a mere bounty that the plaintiff receives upon winning the lawsuit).

LLC. J.A. 781. And the charging order is not limited to a divestiture of interests up to a particular amount, but instead divests Ms. Huster of "any right, title, and interest" in the patents until she satisfies the judgment. Charging Order 2.

It is true that, under the charging order, Ms. Huster could reacquire an interest in Phyllis Anke Technolgies, LLC by paying the judgment amount. But the charging order eliminates any present interest she has in the patents by eliminating her interest in Phyllis Anke Technologies, LLC. And on this record we could only speculate whether Ms. Huster will pay the judgment amount and recover her interests. Such a conjectural basis is insufficient to support standing. *See Spokeo*, 136 S. Ct. at 1548; *Defs. of Wildlife*, 594 U.S. at 560, *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991) ("[A] federal court should not speculate concerning the existence of standing or 'piece together support for the plaintiff.'") (quoting *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1582 (11th Cir. 1985) (per curiam)).

2

Ms. Huster also has failed to carry her burden to establish a cognizable reputational interest in obtaining inventorship or co-inventorship status. We have held that a "concrete and particularized reputational injury" can give a plaintiff standing to sue to be added as an inventor. *See Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015). We need not explore the scope of the "concrete and particularized" language of *Shukh*.

As the district court noted, Ms. Huster's complaint does not allege any facts relating to a reputational injury. Dismissal Order 11. And Ms. Huster did not attempt to introduce such facts into the record in the proceedings on the motion to dismiss for lack of standing. In opposing dismissal, Ms. Huster argued only that "reputational interest alone may be enough to satisfy the requirements

of Article III standing," but did not attempt to tie that statement of legal principle to her situation. Pl. Huster's Resp. Opp. Joint Mot. Dismiss, *Huster*, No. 1:14-cv-3304-ELR (N.D. Ga. Apr. 6, 2015), ECF No. 149. That is not enough to meet her pleading burden. *See Spokeo*, 136 S. Ct. at 1547; *Warth*, 422 U.S. at 518; *Cone*, 921 F.2d at 1210.

On appeal, Ms. Huster points to evidence that she met with an internet executive to discuss the invention and held a workshop on messaging. But Ms. Huster cannot rely on that evidence because she did not present it to the district court in the first instance. *See Verex Assurance*, 3 F.3d at 395; *United States ex rel. Ramseyer*, 90 F.3d at 1518 n.2. And in any event, that evidence, even taken at face value, does not establish a connection between Ms. Huster's reputation and her status as an inventor, much less the kind of injury that would satisfy the requirements for standing.

B

Ms. Huster is on firmer ground in arguing that the district court should have made clear that the dismissal of her correction-of-inventorship claim was *without prejudice*. Under longstanding Eleventh Circuit law, a dismissal for lack of Article III standing must be without prejudice, regardless of the circumstances. *See Zelaya v. Sec'y, Fla. Dep't of Corr.*, 798 F.3d 1360, 1373 (11th Cir. 2015) (citing *Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983)); *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984). In this case, dismissal without prejudice would permit Ms. Huster to file a new lawsuit asserting a correction-of-inventorship claim without encountering a claim-preclusion bar to that claim. And in that case, she could secure an assessment of standing based on, *e.g.*, changed circumstances, such as her satisfaction of the judgment underlying the state-court charging order.

In this case, the district court's judgment and dismissal order do not clearly state whether the dismissal was with or without prejudice. *See* Judgment 1, *Huster*, No. 1:13-cv-3304-ELR (N.D. Ga. Jan. 28, 2016), ECF No. 171; Dismissal Order 24. But clarity is desirable to avoid confusion and disputes about Ms. Huster's right to file a new lawsuit, about which the parties disagreed in the oral argument before this court. *Compare* Oral Argument at 7:03–8:05 (Ms. Huster's counsel) *with id.* at 15:08–15:54 (corporate defendants' counsel). The evident clarification is that dismissal must be understood as a dismissal without prejudice: that is the interpretation consistent with the clear background Eleventh Circuit law; and we generally follow regional circuit law on matters not peculiar to our own court's jurisdiction, *see Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1572–76 (Fed. Cir. 1984) (per curiam).

Under 28 U.S.C. § 2106, we "may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before" us. The clarification needed in this case may be accomplished by our modifying the district court judgment to state that the dismissal is without prejudice and affirming the dismissal judgment as so modified. The Eleventh Circuit has done just that in a similar context. *Crotwell*, 734 F.2d at 769 ("Rather than remanding the case for entry of an order without prejudice, we hereby modify the district court's order by substituting the words 'without prejudice,' for the words 'with prejudice,' and affirm the judgment of the court as modified."). We do so here.[3]

---

[3] Ms. Huster faults the district court for not giving her leave to amend her complaint to substitute Phyllis Anke Technologies, LLC as a plaintiff. But she did not ask for that relief in the district court, and "[a] district court is

III

We review the district court's grant of summary judgment on the state-law claims without deference. *See Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1079 (11th Cir. 2016). We agree with the district court's conclusion that the applicable statute of limitations barred Ms. Huster's state-law claims.

The parties agree that the relevant limitations period is at most four years. *See* Ga. Code Ann. § 9-3-26. Ms. Huster filed her complaint in 2013, which is more than four years after a number of potentially relevant dates, including April 1995, when the '716 patent application was filed; October 1997, when the first patent issued; and December 2006, when the last patent application was filed. In the district court, Ms. Huster argued only that the court should have tolled the statute of limitations until March 2010 because that was when she allegedly learned that Mr. Bobo had applied for and received patents. Tolling aside, she did not argue that her state-law causes of action ripened at some date later than four years before she sued in 2013. In this court, she adds that the "continuing violation" doctrine precluded summary judgment on timeliness. We reject those arguments.

---

not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Moreover, the Eleventh Circuit has explained: "By lacking standing to bring a claim the appellants also lack standing to amend the complaint to consolidate with a party who may have standing." *Wright v. Dougherty Cty.*, 358 F.3d 1352, 1356 (11th Cir. 2004) (per curiam).

Georgia law provides for tolling in certain circumstances involving fraud: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Ga. Code Ann. § 9-3-96. To toll the statute of limitations, the plaintiff must prove: "(1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of a cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action despite his failure to do so within the time of the applicable statute of limitations." *Jim Walter Corp. v. Ward*, 265 S.E.2d 7, 9 (Ga. 1980).

The district court correctly concluded that Ms. Huster did not satisfy her burden of proof with respect to the concealment requirement. That requirement is met only if the defendant's fraud "conceal[s] the existence of the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action." *Charter Peachford Behavioral Health Sys., Inc. v. Kohout*, 504 S.E.2d 514, 522 (Ga. Ct. App. 1998). Here, noting that the alleged concealment consisted of Mr. Bobo's omissions regarding the fact that he was prosecuting the patent applications, the district court concluded that "there is sufficient evidence on the record to establish as a matter of law that [Mr. Bobo's] omissions did not 'debar or deter' [Ms.] Huster from bringing suit." J.A. 12 (footnote omitted). The record supports that conclusion.

The court properly found, as a matter of law, that Ms. Huster had actual knowledge of Mr. Bobo's filing of applications no later than 1996 and that Mr. Bobo's alleged concealment did not prevent her from suing on that basis. In making that finding, the district court relied on an April 2014 deposition in which Ms. Huster testified that (1) in February 1996, she was aware that "an application for the patent" was "being processed"; (2) in 1996, she

hired lawyers "to pursue Mr. Bobo," and one of them, Luba Czura, mentioned "the patent" to her "as an issue that needed to be resolved"; and (3) Ms. Huster believed that she potentially "had rights" to the patent application, but was "afraid" to discuss the matter with Mr. Bobo. Summ. J. Order 7–11. The court also relied on Ms. Huster's notes regarding a June 7, 1997 letter from Ms. Huster to Chuck Beadrot, another attorney, which demonstrated Ms. Huster's knowledge that a patent application had been filed by Mr. Bobo. *Id.* at 12 ("[O]riginal patent filed under Charles Bobo but the lawfirm paid by NetOffice, Inc."). The district court added that Ms. Huster stated in her deposition that "she 'thought [she] had rights to the patent potentially' but avoided asserting those rights because she 'was afraid of talking about it with'" Mr. Bobo. *Id.* at 11. On that evidence, principally from Ms. Huster herself, the district court properly held as a matter of law that she knew, more than a decade before 2010, of Mr. Bobo's filing of applications and was not inhibited from bringing suit by the alleged non-disclosures of Mr. Bobo.

The district court further determined that Ms. Huster's "alleged confidential relationship" with Mr. Bobo did not alter the conclusion that she was not entitled to tolling. *Id.* at 12. In doing so, the court correctly recognized that, under *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 507 S.E.2d 411 (Ga. 1998), which involved a legal malpractice claim, a confidential relationship does not toll the statute of limitations indefinitely where "the plaintiff was fully aware of the facts underlying his allegation of malpractice, but merely slept on his right to bring suit." *Id.* at 415. That principle, the court properly found, precluded Ms. Huster's reliance on any confidential relationship with Mr. Bobo to override the consequences, for the purposes of her tolling assertion, of her knowledge of Mr. Bobo's patent-application activity. Summ. J. Order 12–13.

For related reasons, the district court did not err in concluding that the record established, as a matter of law, that Ms. Huster failed to act with reasonable diligence. *Id.* at 13–15. Although Ms. Huster argued that Mr. Bobo's confidential relationship with her excused her failure to act diligently, the court recited Georgia law establishing that the existence of any confidential relationship between Ms. Huster and Mr. Bobo only lessened, but did not negate, her duty to act diligently. *Id.* at 14; *see Godwin v. Mizpah Farms, LLLP*, 766 S.E.2d 497, 505–06 (Ga. Ct. App. 2014) (A confidential relationship "affects only the extent of . . . the plaintiff's corresponding obligation to discover the fraud for herself.") (quoting *Hunter, MacLean, Exley & Dunn*, 507 S.E.2d at 414). Based on that principle, the court properly concluded that Ms. Huster "presented absolutely no evidence of diligence on her part in discovering her cause of action, even if considered under the lessened standard" for diligence in the presence of a confidential relationship. Summ. J. Order 14; *see also* Pl. Huster's Resp. Opp. Def. Bobo's Mot. Dismiss, *Huster*, No. 1:14-cv-3304-ELR (N.D. Ga. Apr. 6, 2015) (Pl.'s Opp.), ECF No. 147.

Additionally, the court pointed to affirmative evidence of Ms. Huster's lack of diligence, including Ms. Huster's own testimony that "she previously used simple Internet searches to research patent filings" and that "she did not trust [Mr.] Bobo." Summ. J. Order at 13, 14. "On these facts," the court concluded, Ms. Huster "certainly would have been under an obligation to exercise *some* degree of diligence in discovering her cause of action" but failed to do so, *id.* at 14, even though she was "plainly aware that a patent application was being prepared sufficient to indicate that her rights may be involved," *id.* at 8. We see no error in those determinations.

Besides seeking to toll the statute of limitations, Ms. Huster argues that the continuing-violation doctrine precluded Mr. Bobo's limitations defense. But she forfeit-

ed that argument by not making it in the district court. In opposing dismissal, Ms. Huster argued only that she did not discover Mr. Bobo's fraud until March 2010. Pl.'s Opp. 5–8, 10. She did not mention the continuing-violation doctrine. The district court cannot be faulted for not addressing a contention that Ms. Huster did not present to it. Moreover, Ms. Huster herself states that addressing the issue at this stage would require consideration of "[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged"—here, involving five separate state-law claims. Appellant's Br. 42 (quoting *Ocean Acres Ltd. v. Dare Cty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)). That is not the kind of issue that may be newly introduced into the case upon appellate review.

CONCLUSION

For the foregoing reasons, we modify the district court's judgment to dismiss Ms. Huster's correction-of-inventorship claim without prejudice. We affirm the judgment as modified.

Costs awarded to appellees.

**AFFIRMED AS MODIFIED**